Jahan C. Sagafi (SBN 224887)
jsagafi@outtengolden.com
Moira Heiges-Goepfert (SBN 326861)
mhg@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Steven Elster (SBN 227545)
steve.elster.law@gmail.com
LAW OFFICE OF STEVEN ELSTER
785/E2 Oak Grove Road, No. 201
Concord, CA 94518
Telephone: (925) 324-2159

*Attorneys for Plaintiffs and Class Members*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND/SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SHAWN CLAYBORNE, an individual, on behalf of himself, all others similarly situated, and all other aggrieved employees; DAVID POOL, an individual, on behalf of himself and all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CHEVRON U.S.A. INC., NEWTRON LLC, PERFORMANCE MECHANICAL, INC., HARDER MECHANICAL CONTRACTORS, INC., CONSTRUCTION & TURNAROUND SERVICES, L.L.C., SPECIALTY WELDING AND TURNAROUNDS, LLC, and DOES 1-100, inclusive,<br><br>DEFENDANTS. | Case No. 4:19-cv-07624-JSW<br><br>**SECOND AMENDED COMPLAINT FOR**<br><br>**CLASS ACTION**<br><br>(1)  UNPAID WAGES FOR ALL HOURS WORKED<br>(2)  UNPAID WAGES FOR DOCKING EMPLOYEES IN EXCESSIVE INCREMENTS<br>(3)  UNPAID MINIMUM WAGE<br>(4)  FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS<br>(5)  FAILURE TO PAY ALL WAGES EACH PAYDAY<br>(6)  WILLFUL FAILURE TO PAY FINAL WAGES<br>(7)  UNFAIR COMPETITION (Business & Professions Code §§ 17200 *et seq.*)<br><br>**PAGA ACTION**<br><br>(8)  PRIVATE ATTORNEYS GENERAL ACT VIOLATIONS (Labor Code §§ 2698 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shawn Clayborne ("Clayborne") and Plaintiff David Pool ("Pool") (Clayborne and Pool collectively referred to herein as "Plaintiffs") allege on behalf of themselves and all those similarly situated and all other aggrieved employees as follows:

### SUMMARY OF CLAIMS

1.    Clayborne was employed by Chevron U.S.A. Inc. ("Chevron") and Newtron, LLC ("Newtron") at Chevron's refinery in Richmond, California.  Chevron is liable as a direct employer and as a joint employer under California law, and as a client employer under California Labor Code section 2810.3.  Clayborne brings this action as a class action on behalf of himself and all others similarly situated and as a PAGA action on behalf of the State of California, himself, and all other aggrieved employees at Chevron's oil refineries in California ("Employees").

2.    Pool was employed at Chevron's refinery in Richmond, California by Chevron and Performance Mechanical, Inc. ("PMI"), by Chevron and Harder Mechanical Contractors, Inc. ("Harder"), by Chevron and Construction & Turnaround Services, L.L.C. ("CTS") and by Chevron and Specialty Welding and Turnarounds, LLC ("SWAT").  Chevron is liable as a direct employer and as a joint employer under California law, and as a client employer under California Labor Code section 2810.3.  Pool brings this action as a class action on behalf of himself and Employees.

3.    Chevron, Newtron, PMI, Harder, CTS, and SWAT are referred to herein as "Defendants."  Chevron and Newtron are referred to herein as "PAGA Defendants."  Newtron, PMI, Harder, CTS, and SWAT are referred to herein as "Labor Contractor Defendants."

4.    Plaintiffs allege that Defendants violated and continue to violate the California Labor Code and Wage Order protections applicable to themselves and Employees, specifically:

(a)    Defendants' policy and practice of not compensating Plaintiffs and Employees for all hours worked at the start of their workdays, starting from the time that Defendants require Plaintiffs and Employees to report to designated parking lots for employer-

1

mandated travel to their worksites, and including time that Defendants required Plaintiffs and Employees to spend donning special protective clothing and work gear;

(b)  Defendants' policy and practice of not compensating Plaintiffs and Employees, for all hours worked at the end of their workdays, including through the time Plaintiffs and Employees are able to depart after employer-mandated travel from their worksites back to designated parking lots;

(c)  Defendants' policy and practice of docking Plaintiffs' and Employees' pay in excessive increments, including for periods of time during which Plaintiffs and Employees were subject to Defendants' control.  For example, when Plaintiffs and Employees leave early from designated parking lots, Defendants dock their pay in increments of time that exceed the amount of time that Plaintiffs and Employees have left early from work;

(d)  Defendants' policy and practice of failing to provide Plaintiffs and Employees with complete and accurate itemized wage statements, and failing to keep proper payroll records;

(e)  Defendants' policy and practice of failing to pay Plaintiffs and Employees, in a timely manner during their employment;

(f)  Defendants' policy and practice of failing to pay Plaintiffs and former Employees all wages due at the time of discharge, termination or departure and for willfully failing to pay all wages due;

(g)  Chevron's policy and practice of obtaining or being provided workers (Employees) from labor contractors to perform work within Chevron's usual course of business at its oil refineries in California, thereby sharing its labor contractors' civil legal responsibility and civil liability for Employees' wages; and

(h)  Defendants' policy and practice of violating California Business and Professions Code §§ 17200, *et seq.*, for engaging in unlawful, unfair, or deceptive business acts or practices.

5.      Plaintiffs bring their claims under the California Labor Code, Wage Order 16-2001 of the California Industrial Welfare Commission ("Wage Order 16"), and the California Unfair Competition Law ("UCL") on behalf of themselves and all Employees who worked in California from September 20, 2015 through the date of the final disposition of this action.

6.      Due to Defendants' violations of the California Labor Code, Clayborne and other Employees are "aggrieved employees" pursuant to the Private Attorneys General Act, Labor Code §§ 2698 *et seq*., ("PAGA").  Clayborne thus also brings this action against PAGA Defendants on behalf of the State of California, himself, and all other aggrieved employees for civil penalties for violations of Labor Code §§ 201, 202, 203, 204, 204b, 210, 226(a), 226.3, 226.6, 558, 558.1, 1174(c) and (d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

8.      Plaintiffs and the members of the proposed class are citizens of states different from those of Defendant Newtron.

9.      There are at least 100 members in the proposed class.

10.      Defendants are subject to personal jurisdiction in California because each Defendant conducts substantial business activity in California and engages in the unlawful acts described herein in California.

11.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

1

## THE PARTIES

2

**I.    Plaintiffs**

3

    **A.    Shawn Clayborne**

4

    13.    Plaintiff Shawn Clayborne was employed at Chevron's petroleum refinery in

5

Richmond, California by Chevron and Newtron from approximately August 2018 to

6

approximately December 2018.

7

    **B.    David Pool**

8

    14.    Plaintiff David Pool was employed at Chevron's petroleum refinery in Richmond,

9

California by Chevron and PMI from approximately October 10 to November 30, 2016, by

10

Chevron and Harder from approximately December 3, 2016 to February 28, 2017, by Chevron

11

and CTS from approximately January to March 2018, and by Chevron and SWAT in

12

approximately April 2019.

13

**II.    Defendants**

14

    **A.    Chevron U.S.A., Inc.**

15

    15.    Chevron is a Pennsylvania corporation registered with the California Secretary of

16

State and doing business in California.

17

    16.    Chevron is headquartered in San Ramon, California.

18

    17.    Within the statutory period and during all times relevant to this Complaint,

19

Chevron has employed Plaintiffs and Employees, whether directly or jointly, in California

20

pursuant to the California Labor Code and Wage Order 16.  Chevron has also obtained or been

21

provided with Plaintiffs and Employees to perform labor within Chevron's usual course of

22

business from labor contractors.

23

    **B.    Newtron, LLC**

24

    18.    Newtron is a Delaware limited liability company registered with the California

25

Secretary of State and doing business in California.

26

    19.    Newtron is headquartered in Baton Rouge, Louisiana.

27

28

4

20.    Within the statutory period, Newtron has employed Clayborne and Employees in California pursuant to the California Labor Code and Wage Order 16 of the California Industrial Welfare Commission.  In addition, as a labor contractor, Newtron has supplied Chevron, as a client employer, either with or without a contract, with workers to perform labor within Chevron's usual course of business.

**C.    Performance Mechanical, Inc.**

21.    PMI is a California corporation registered with the California Secretary of State and doing business in California.

22.    PMI is headquartered in Pittsburgh, California.

23.    Within the statutory period, PMI has employed Pool and Employees in California pursuant to the California Labor Code and Wage Order 16 of the California Industrial Welfare Commission.  In addition, as a labor contractor, PMI has supplied Chevron, as a client employer, either with or without a contract, with workers to perform labor within Chevron's usual course of business.

**D.    Harder Mechanical Contractors, Inc.**

24.    Harder is an Oregon corporation registered with the California Secretary of State and doing business in California.

25.    Harder is headquartered in Portland, Oregon.

26.    Within the statutory period, Harder has employed Pool and Employees in California pursuant to the California Labor Code and Wage Order 16 of the California Industrial Welfare Commission.  In addition, as a labor contractor, Harder has supplied Chevron, as a client employer, either with or without a contract, with workers to perform labor within Chevron's usual course of business.

**E.    Construction & Turnaroud Services, L.L.C.**

27.    CTS is an Oklahoma limited liability company registered with the California Secretary of State and doing business in California.

28.    CTS is headquartered in Tulsa, Oklahoma.

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

29.     Within the statutory period, CTS has employed Pool and Employees in California pursuant to the California Labor Code and Wage Order 16 of the California Industrial Welfare Commission.  In addition, as a labor contractor, CTS has supplied Chevron, as a client employer, either with or without a contract, with workers to perform labor within Chevron's usual course of business.

**F.     Specialty Welding and Turnarounds, LLC**

30.     SWAT is a Louisiana limited liability company registered with the California Secretary of State and doing business in California.

31.     SWAT is headquartered in Gonzales, Louisiana.

32.     Within the statutory period, SWAT has employed Pool and Employees in California pursuant to the California Labor Code and Wage Order 16 of the California Industrial Welfare Commission.  In addition, as a labor contractor, SWAT has also supplied Chevron, as a client employer, either with or without a contract, with workers to perform labor within Chevron's usual course of business.

**G.     DOES 1 through 100**

33.     DOES 1 through 100, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to Plaintiffs at this time.  When their true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities herein.  Plaintiffs are informed and believe, and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages as alleged herein were actually and/or proximately caused by such Defendants.

34.     Plaintiffs are informed and believe and thereon allege that at all relevant times each Defendant was the principal, agent, employer, owner, manager, managing agent, joint employer, employee, partner, servant, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other

Defendants so as to be liable for the conduct of them.  Plaintiffs are also informed and believe and thereon allege that pursuant to Labor Code § 558.1, each Defendant was an employer or other person acting on behalf of an employer, who violated, or caused to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violated, or caused to be violated, Labor Code §§ 203, 226, or 1194, and thus, may be held liable as the employer for such violation.  Plaintiffs are further informed and believe and thereon allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants, and that each Defendant acted pursuant to an agreement to do the things alleged herein.

**H.    Defendants Directly and/or Jointly Employed Plaintiffs and Employees**

35.    At all relevant times, Plaintiffs and Employees were subject to the control, direction and supervision of Defendants in connection with Plaintiffs' and Employees' hours worked, and such hours worked were within the usual course of Defendants' business.

36.    Defendant Chevron employed Plaintiffs and Employees directly and/or jointly together with Newtron, PMI, Harder, CTS, SWAT, and other labor contractors

37.    Defendant Newtron employed Clayborne and certain Employees directly and/or jointly together with Chevron.

38.    Defendant PMI employed Pool and certain Employees directly and/or jointly together with Chevron.

39.    Defendant Harder employed Pool and certain Employees directly and/or jointly together with Chevron.

40.    Defendant CTS employed Pool and certain Employees directly and/or jointly together with Chevron.

41.    Defendant SWAT employed Pool and certain Employees directly and/or jointly together with Chevron.

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

42.    At all relevant times, Defendants directly and/or jointly employed Plaintiffs and Employees in California by, *inter alia*, suffering or permitting them to work, and exercising direct or joint control over their wages, hours and working conditions.

43.    Upon information and belief, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, operated in concert and each retained and shared significant control over the terms and conditions of Plaintiffs' and Employees' employment, including, without limitation, those terms and conditions related to the claims alleged herein.

44.    Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, exercised control over the terms and conditions of Plaintiffs' and Employees' employment, directly or indirectly and jointly or severally through, *inter alia*: hiring and firing; supervising Plaintiffs' and Employees' work at Chevron's worksites; training, evaluating, disciplining and promoting Plaintiffs and Employees; scheduling and assigning work at Chevron's worksites; providing the facilities at which Plaintiffs and Employees performed their required work; providing tools, equipment and materials necessary for Plaintiffs and Employees to perform their work; providing parking lots, buses, and bus drivers for employer-mandated travel to and from Plaintiffs' and Employees' worksites; mandating the time of day that Plaintiffs and Employees were required to report to designated parking lots for employer-mandated travel to their worksites at the start of their workday, and the time of day that Plaintiffs and Employees were allowed to depart from designated parking lots after employer-mandated travel from their worksites back to the parking lots at the end of their workday; requiring that Plaintiffs and Employees don special work clothing and protective gear at the start of their workday; tracking Plaintiffs' and Employees' hours; controlling the equipment, policies, and procedures for "clocking" or "badging" in and out at the start and end of workdays; and instituting or enforcing the policies challenged herein with respect to employer-mandated travel, donning special work clothing and protective gear, compensation for hours worked, docking for early departures and/or late arrivals, and inaccurate wage statements.

I.    **Chevron Is a "Client Employer"**

45.    At all relevant times, Chevron was a "client employer" for purposes of Cal. Labor Code § 2810.3 in that it obtained or was provided workers, including Clayborne and Employees, to perform labor within Chevron's "usual course of business" from various labor contractors, including Labor Contractor Defendants, and other individuals and entities.  Cal. Lab. Code §§ 2810.3(a)(1), (3), (6).

46.    At all relevant times, Labor Contractor Defendants, and other contractors who provided Chevron with workers to perform labor at Chevron's oil refineries in California, were and are "labor contractors" for purposes of Labor Code § 2810.3.  Labor Contractor Defendants and other such contractors supplied Chevron with workers, including Clayborne and Employees, to perform labor "within [Chevron's] usual course of business," which labor was performed "within or upon the premises or worksite of [Chevron]." Labor Code §§ 2810.3(a)(3), (6).

47.    Clayborne has provided Chevron with more than 30-days' notice of Clayborne's intent to pursue claims against Chevron pursuant to Labor Code§ 2810.3.

## **FACTUAL BACKGROUND**

I.    **Defendants' Policy and Practice of Not Compensating Plaintiffs or Employees for All Hours Worked at the Start and End of Their Workdays.**

A.    **Unpaid Time at Start of Workday**

1.    **Plaintiffs and Employees are required to report at specific times of day to designated parking lots to be transported to worksites at Chevron's refineries.**

48.    At Chevron's refineries in Richmond, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and Employees to report at specific times of day to designated parking lots, including parking lots known as "Gate 91" and the "Kellum lot."  Likewise, at Chevron's refinery in El Segundo, Chevron and other labor contractors require Employees to report at specific times of day to designated parking lots, including a parking lot known as "Gate No. 10A."  For example, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and Employees to report to designated parking lots by specified times before the start of their specified shift time. Chevron then transports Plaintiffs and Employees, or causes Plaintiffs and Employees to be

transported, from the designated parking lots to their worksites at Chevron's refineries.  Chevron transports Plaintiffs and Employees, or causes Plaintiffs and Employees to be transported, in buses provided and paid for by Chevron.  Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, prohibit Plaintiffs and Employees from using their own transportation to arrive directly at their worksites at Chevron's refineries.  Plaintiffs and Employees are subject to the control of Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, beginning at the time that they are required to report to designated parking lots.

### 2.    Plaintiffs and Employees are not compensated beginning at the time they are required to report to designated parking lots.

49.    At Chevron's refineries in Richmond and El Segundo, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, do not compensate Plaintiffs and Employees beginning at the specified times that they are required to report to designated parking lots for employer-mandated travel to their worksites at Chevron's refineries.  Instead, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, compensate them beginning at a specified shift time after Chevron's buses have delivered Plaintiffs and Employees to their worksites at Chevron's refineries (and after they have donned special work clothing and protective gear).

### 3.    Plaintiffs and Employees are not compensated for their time spent donning special work clothing and protective gear.

50.    After being bused to Chevron's worksites at Chevron's refineries in Richmond and El Segundo, but before they start being compensated for the day, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and Employees to spend time donning special work clothing and protective gear.  Such special work clothing and protective gear is provided to Plaintiffs and Employees by Chevron and Labor Contractor Defendants, or Chevron and other labor contractors.  Chevron provides a changing location at its facilities where Plaintiffs and Employees are required to change into such special work clothing and protective gear.  Despite requiring Plaintiffs and Employees to don such special work

clothing and protective gear as a condition of employment, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, do not compensate Plaintiffs and Employees for the time they spend donning such special clothing and gear.  Rather, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, compensate them beginning at a specified shift time after Plaintiffs and Employees have already donned all required work clothing and protective gear.

**B.** **Unpaid Time at End of Workday**

**1.** **Plaintiffs and Employees are delivered back to designated parking lots after they have stopped being paid.**

51.     At the end of the workday at Chevron's refineries in Richmond and El Segundo, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and Employees to be bused from their worksites at Chevron's refineries back to designated parking lots.  Chevron again transports Plaintiffs and Employees in buses provided and paid for by Chevron.  Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, pay Plaintiffs and Employees until a time by which Plaintiffs and Employees are scheduled to be delivered back to the designated parking lots, such as 4:30 p.m.  However, there are occasions when Chevron delivers Plaintiffs and Employees back to the designated parking lots after the intended time, or when Chevron and Labor Contractor Defendants, or Chevron and other labor contractors, do not otherwise permit Plaintiffs and Employees to depart from the designated parking lots until after the scheduled time, such as until 4:40 p.m.  On such occasions, Plaintiffs and Employees are subject to Defendants' control until Chevron delivers them back to the designated parking lots and Plaintiffs and Employees are able to depart.  On such occasions, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, do not pay Plaintiffs and Employees through the time that Chevron delivers them back to the designated parking lots and Plaintiffs and Employees are able to depart.  Instead, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, stop paying Plaintiffs and Employees at the time by which Plaintiffs and Employees were scheduled to be delivered back to the designated parking lots, such as at 4:30 p.m.

**II.    Defendants' Policy and Practice of Docking Wages from Plaintiffs and Employees for Increments of Time in Excess of the Periods of Time at Issue.**

52.    Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, also dock Plaintiffs' and Employees' pay during periods of time during which Plaintiffs and Employees are subject to their control.  For example, at the end of their workdays at Chevron's refineries in Richmond and El Segundo, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, pay Plaintiffs and Employees up through a time by which Plaintiffs and Employees are scheduled to be delivered back to designated parking lots, such as through 4:30 p.m.  However, Chevron sometimes delivers Plaintiffs and Employees back to a parking lot early, prior to the scheduled time, such as at 4:20 p.m.  When Chevron delivers Plaintiffs and Employees back to a parking lot early, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and Employees to remain at the parking lot until the time that Plaintiffs and Employees should have been delivered back to the parking lot.  For example, if Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, intended to deliver Plaintiffs and Employees to a parking lot by 4:30 p.m., but Chevron instead delivers them back to the parking lot at 4:20 p.m., Chevron and Newtron, and Chevron and other labor contractors, require Plaintiffs and Employees to remain at the parking lot until 4:30 p.m. before departing.  If instead of waiting at the parking lot until 4:30 p.m. to depart, Plaintiffs and Employees depart prior to that time, such as at 4:28 p.m., Chevron and Newtron, and Chevron and other labor contractors, dock their wages for longer increments of time, such as for 15 minutes.

**III.    Defendants' Policy and Practice of Failing to Provide Accurate Wage Statements.**

53.    Because Defendants do not pay Plaintiffs and Employees for all hours worked, Defendants provide, or cause Plaintiffs and Employees to be provided with, wage statements that do not show their gross wages earned, their total hours worked, their net wages earned, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by Plaintiffs and Employees.

54.     Defendants also fail to keep payroll records, or fail to cause payroll records to be kept, showing Plaintiffs' and Employees' total daily hours worked and total hours worked during each payroll period and applicable rates of pay.

**IV.    Defendants' Policy and Practice of Not Paying Plaintiffs and Employees All Wages Earned Each Payday.**

55.     During the course of Plaintiffs' and Employees' employment, Defendants fail to pay Plaintiffs and Employees all wages for all hours worked.  Thus, Defendants fail to pay Plaintiffs and Employees, or fail to cause Plaintiffs and Employees to be paid, all wages earned each payday.

**V.    Defendants' Policy and Practice of Failing to Pay, and Willfully Failing to Pay, All Wages Due to Plaintiffs and Employees at the End of Their Employment.**

56.     At the end of Plaintiffs' and Employees' employment, Defendants fail to pay Plaintiffs and Employees all wages for all hours worked.  Defendants' failure to pay all wages to Plaintiffs and Employees, or failure to cause such wages to be paid, at the end of their employment is willful and not inadvertent.

## CLASS ACTION ALLEGATIONS

57.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Clayborne and Pool bring claims for relief for violations of the California Labor Code, Wage Order 16 and UCL on behalf of all Employees as a class action with the Class defined as:

> Hourly workers employed directly and/or jointly by Chevron and Newtron, Chevron and PMI, Chevron and Harder, Chevron and CTS, Chevron and SWAT, or by Chevron and/or other labor contractors, who were not paid for all Pre-Shift Work Time or Post-Shift Work Time at Chevron's facilities in California during the liability period, except that no hours worked for Cherne Contracting Corporation, Nooter Construction Company and Contra Costa Electric, Inc. shall be included.  Pre-Shift Work Time is the time from when Plaintiffs and Employees were required to report to parking locations prior to employer-mandated travel until the time Plaintiffs and Employees began to be compensated for the day (including any time spent waiting or traveling between parking locations and worksites, and any time spent donning special work clothing or protective gear).  Post-Shift Work Time is the time from when Plaintiffs and Employees ceased being compensated for the day until the time when Plaintiffs and Employees were able to depart from parking locations after

employer-mandated travel, and includes time docked for early departures
from work in excess of the amount of time of their early departures.

**Rule 23(a)**

58.      Numerosity.   The Class is so numerous that joinder of all members is
impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the class
period, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, have
employed at least hundreds of persons who fall within the Class definition.

59.      Commonality.  Common questions of law and fact exist as to members of the
Class.  Because Chevron and Labor Contractor Defendants, and Chevron and other labor
contractors, subjected Class members to uniform policies and practices governing employer-
mandated travel, donning special work clothing and protective gear, compensation, and wage
statements, the answers to these questions will produce common answers for all Class members.
Examples of such common questions of law and fact include the following:

- Whether Defendants required Class members to report to designated parking lots at the start of their workdays for employer-mandated travel to their worksites;

- Whether Defendants compensated Class members for all hours worked at the start of their workdays, including from the time they are required to report to designated parking lots for employer-mandated travel;

- Whether Defendants required Class members to don special work clothing or protective gear prior to performing work on Chevron's premises;

- Whether Defendants compensated Class members for all hours worked at the start of their workdays, including for time spent donning special work clothing or protective gear;

- Whether Defendants delivered Class members back to designated parking lots after Class members had ceased being compensated for the workday;

- Whether Defendants compensated Class members for all hours worked at the end of their workdays, including up to the time Class members were able to depart after employer-mandated travel back to designated parking lots;

- Whether California law requires Defendants to pay Class members from the time Class members are required to report to designated parking lots for employer-mandated travel at the start of their workdays until the time Class members are able to depart the designated parking lots at the end of their workdays, and other hours worked at the start and end of their workdays;

- Whether Defendants docked Class members' wages for intervals of time during which Class members were subject to Defendants' control;

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

- Whether California law permits Defendants to dock the wages of Class members for intervals of time during which Class members were subject to Defendants' control;

- Whether Defendants failed to pay Class members the minimum wage for all hours worked, including from the time Class members are required to report to designated parking lots for employer-mandated travel at the start of their workdays until the time Class members are able to depart the designated parking lots at the end of their workdays, and other hours worked at the start and end of their workdays, and for instances when Defendants docked Class members' wages for intervals of time during which Class members were subject to Defendants' control;

- Whether Defendants failed to pay Class members their regular rate of pay for all hours worked, including (a) from the time Class members are required to report to designated parking lots for employer-mandated travel at the start of their workdays until the time Class members are able to depart the designated parking lots at the end of their workdays and (b) the time Class members spend donning special clothing or protective gear, and other hours worked at the start and end of their workdays, and for instances when Defendants docked Class members' wages for intervals of time during which Class members were subject to Defendants' control;

- Whether Defendants failed to provide Class members with accurate itemized wage statements;

- Whether Defendants failed to pay Class members all wages due them each payday;

- Whether Defendants failed to pay all wages due at the end of employment;

- Whether Defendants willfully failed to pay all wages due at the end of employment;

- Whether Chevron shares with Labor Contractor Defendants, and other labor contractors all civil legal responsibility and civil liability for the payment of wages due to Employees supplied by Labor Contractor Defendants and other labor contractors under California Labor Code § 2810.3;

- Whether Defendants' policies and practices violated Labor Code §§ 201, 202, 203, 204, 204b, 210, 226, 226.3, 226.6, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, and 1199, Business and Professions Code §§ 17200, *et seq.*, and California Industrial Welfare Commission Wage Order No. 16;

- Whether Class members are entitled to monetary damages, including any portion of civil penalties pursuant to PAGA;

- Whether Class members are entitled to declaratory and injunctive relief;

- Whether Class members are entitled to equitable relief, including restitution, under Business and Professions Code §§ 17200, *et seq.*

60.  Typicality.  Plaintiffs' claims are typical of Class members' claims.  Plaintiffs, like other Class members, were subjected to Defendants' common policies and practices that violated California law, and sustained injury and economic loss as a result.  Defendants' conduct towards

15

1   Plaintiffs in violating California law is typical of Defendants' conduct towards other Class

2   members in violating California law.  In particular, Chevron subjected Plaintiffs and Class

3   members to the same policies and practices with regard to mandatory parking, busing, clocking in

4   and out, donning special clothing and protective gear, and docking wages at all of its oil refinery

5   sites in California.  Plaintiffs' injuries with respect to the violations alleged are therefore typical

6   of those suffered by other Class members.

7          61.    Adequacy.  Plaintiffs will fairly and adequately represent and protect the interests

8   of the Class members.  Plaintiffs have no interests that are antagonistic to those of the Class and

9   are not subject to any unique defenses.  Plaintiffs understand their obligations as class

10  representatives, have already undertaken steps to fulfill them, and are prepared to continue to

11  fulfill their duties as class representatives.  Plaintiffs' counsel are experienced in employment

12  class actions and will fairly and adequately represent and protect the interests of the Class

13  members.

14  **Rule 23(b)(2)**

15         62.    This action is also properly maintainable as a class action under Rule 23(b)(2) of

16  the Federal Rules of Civil Procedure.  Defendants are alleged to have violated California law in a

17  common manner as to all members of the Class.  As such, Defendants have acted or refused to act

18  on grounds that apply generally to the Class, making appropriate declaratory, equitable, and

19  injunctive relief with respect to Plaintiffs and the Class Members as a whole.

20         63.    The monetary relief that Plaintiffs seek either flows from and/or is incidental to the

21  declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can

22  be calculated in a simple, objective, and mechanical manner.

23  **Rule 23(b)(3)**

24         64.    This action is also properly maintainable as a class action under Rule 23(b)(3) of

25  the Federal Rules of Civil Procedure.  The questions of law and fact common to the members of

26  the Class predominate over questions affecting only individual members and a class action is

27  superior to other available methods for the fair and efficient resolution of this controversy.

28

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

65.     Damages are capable of measurement on a class-wide basis.  The propriety and amount of damages are based on Defendants' common conduct, making these issues common to the Class.  Plaintiffs and the Class members will rely on common evidence to resolve their legal and factual questions, including Defendants' policies and records during the relevant period.

66.     There is one other pending individual and PAGA action, *Diaz v. Chevron Corp.*, C20-00192, (Contra Costa Cnty. Super. Ct.), alleging similar claims against Defendant Chevron and two other labor contractors not named in this action, Contra Costa Electric, Inc. ("CCE"), and Nooter Construction Company ("Nooter").  The Class defined herein, however, excludes hours worked at Chevron's facilities through CCE and Nooter.  Plaintiffs are unaware of any other pending litigation raising the same or similar claims on behalf of Class members.

67.     Class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants, and damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.

68.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Defendant Chevron resides in this District and all Defendants have substantial business operations in this District, the alleged acts and omissions occurred in this District, and, a significant portion the Class members likely were employed in this District and reside in this District.

69.     There will be no undue difficulties in managing this case as a class action.

**FIRST CLAIM FOR RELIEF**
**Unpaid Wages for All Hours Worked**
**[Labor Code §§ 1199, 2810.3 and Wage Order 16]**
**(Against All Defendants)**

70.     Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

71.     Wage Order 16, Section 5(A) of the California Industrial Welfare Commission requires that "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay."  Wage Order 16, Section 2(J) defines "[h]ours worked" as "the time during which an

17

1    employee is subject to the control of an employer, and includes all the time the employee is

2    suffered or permitted to work, whether or not required to do so."

3         72.    At the start of the workday, Chevron and Labor Contractor Defendants, and

4    Chevron and other labor contractors, require Plaintiffs and the Class to be present at parking lots

5    designated by Chevron for employer-mandated travel to worksites at Chevron's refineries.

6    Plaintiffs and the Class are subject to Defendants' control once Chevron and Labor Contractor

7    Defendants, and Chevron and other labor contractors, require their presence at parking lots

8    designated for employer-mandated travel to worksites at Chevron's refineries.

9         73.    Plaintiffs' and the Class's hours worked begin when Chevron and Labor

10   Contractor Defendants, and Chevron and other labor contractors, require their presence at parking

11   lots designated by Chevron for employer-mandated travel to worksites at Chevron's refineries.

12   However, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors,

13   do not begin compensating Plaintiffs and the Class from the time they require Plaintiffs and the

14   Class to be present at designated parking lots.  Instead, Chevron and Labor Contractor

15   Defendants, and Chevron and other labor contractors, begin compensating Plaintiffs and the Class

16   at a later time after Plaintiffs and the Class have been delivered to their worksites at Chevron's

17   refineries.

18        74.    Chevron and Labor Contractor Defendants, and Chevron and other labor

19   contractors, also require Plaintiffs and Employees to spend time donning special work clothing

20   and protective gear at the start of each workday.  Despite requiring Plaintiffs and Employees to

21   don such special work clothing and protective gear as a condition of employment, Chevron and

22   Labor Contractor Defendants, and Chevron and other labor contractors, do not compensate

23   Plaintiffs and Employees for the time they spend donning such special clothing and gear.  Instead,

24   Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, begin

25   compensating Plaintiffs and the Class at a specified shift time after Plaintiffs and the Class have

26   already donned special clothing and protective gear at Chevron's refinery sites.

27

28

75.     At the end of the workday, Chevron delivers Plaintiffs and the Class back to parking lots designated by Chevron.  Plaintiffs and the Class are subject to Chevron's control until Chevron delivers them back to the designated parking lots and Plaintiffs and the Class are able to depart.

76.     On occasions at the end of the workday, Chevron delivers Plaintiffs and the Class back to the designated parking lots and Plaintiffs and the Class are only able to depart at points in times after Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, have stopped compensating them.

77.     Thus, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, fail to compensate Plaintiffs and the Class for all hours worked, including from the time Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and the Class to report to designated parking lots for employer-mandated travel at the start of their workday until the time Plaintiffs and the Class are able to depart from designated parking lots after employer-mandated travel at the end of their workday.

78.     California Labor Code § 2810.3 states that "A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for…the payment of wages."  Section 2810.3 further states that a "client employer shall not shift to the labor contractor any legal duties or liabilities . . . with respect to workers supplied by the labor contractor."

79.     Section 2810.3 defines a "labor contractor" as "an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business."

80.     Section 2810.3 defines a "client employer" as "a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor."

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

81.     Labor Contractor Defendants and other contractors are "labor contractors" within the definition of Labor Code § 2810.3, as they supplied Chevron with workers to perform labor within Chevron's usual course of business at its refineries in California.

82.     Defendant Chevron is a "client employer" within the definition of Labor Code § 2810.3 as Chevron is a "business entity" that obtains workers from Labor Contractor Defendants and other labor contractors to perform labor within its usual course of business.

83.     As a "client employer" under § 2810.3, Chevron shares with Labor Contractor Defendants and other labor contractors all civil legal responsibility and civil liability for the payment of wages with respect to workers supplied by those labor contractors.

84.     Because of Defendants' policy and practice of not compensating Plaintiffs and the Class for all hours worked, including from the time Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, require Plaintiffs and the Class to report to designated parking lots for employer-mandated travel at the start of their workday to the time Plaintiffs and the Class are able to depart from designated parking lots after employer-mandated travel at the end of their workday and all other pre- and post-shift work time, Defendants violate Wage Order 16 and Labor Code § 1199, and Defendants owe wages to Plaintiffs and the Class at their regular rate of pay for all hours worked, as required by Wage Order 16.  Plaintiffs seek these unpaid wages from Defendants on behalf of themselves and the Class.

**SECOND CLAIM FOR RELIEF**
**Unpaid Wages for Docking Employees for in Excess of the Time Periods at Issue**
**[Labor Code §§ 1199, 2810.3 and Wage Order 16]**
**(Against All Defendants)**

85.     Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

86.     Wage Order 16, Section 2(J) defines "[h]ours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

87.    Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, dock the wages of Plaintiffs and the Class during periods of time during which Plaintiffs and the Class are subject to their control.

88.    For example, when at the end of their workdays, Plaintiffs and the Class depart from the designated parking lots before the times specified for them to remain at the parking lots, Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, dock the wages of Plaintiffs and the Class in increments of time in excess of the amount of time of their early departures.  The docked increments of time in excess of the amount of time of their early departures are increments of time during which Plaintiffs and the Class are subject to Chevron's and Labor Contractor Defendants', and Chevron's and other labor contractors', control. Defendants thus fail to compensate Plaintiffs and the Class for all hours worked.

89.    Labor Contractor Defendants, and other contractors served as "labor contractors" under § 2810.3 by providing workers to perform labor within the usual course of Chevron's business.

90.    As a "client employer" under § 2810.3, Chevron shares with Labor Contractor Defendants and its other labor contractors all civil legal responsibility and civil liability for the payment of wages with respect to workers supplied by those labor contractors.

91.    Because of Defendants' policy and practice of not compensating Plaintiffs and the Class for all hours worked, including for increments of time docked by Defendants during which Plaintiffs and the Class were subject to Defendants' control, Defendants violate Wage Order 16 and Labor Code § 1199, and Defendants owe wages to Plaintiffs and the Class at their regular rate of pay for all hours worked, as required by Wage Order 16.  Plaintiffs seek these unpaid wages from Defendants on behalf of themselves and the Class.

### THIRD CLAIM FOR RELIEF
**Unpaid Minimum Wage**
**[Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, 2810.3 & Wage Order 16]**
**(Against All Defendants)**

92.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

21

93.     The foregoing conduct, as alleged, violates Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16, which protect Plaintiffs' and the Class's right to earn a minimum wage and provide for damages and penalties for violations of that right.

94.     Labor Contractor Defendants, and other contractors served as "labor contractors" under § 2810.3 by providing workers to perform labor within the usual course of Chevron's business.

95.     As a "client employer" under § 2810.3, Chevron shares with Labor Contractor Defendants and its other labor contractors all civil legal responsibility and civil liability for the payment of wages with respect to workers supplied by those labor contractors.

96.     Defendants' policy and practice of not paying Plaintiffs and the Class the minimum wage for all hours worked violates these minimum wage protections of the Labor Code.

97.     Plaintiffs, on behalf of themselves and the Class, seek the unpaid minimum wages owed them and liquidated damages pursuant to Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, 2810.3 and Wage Order 16.

**FOURTH CLAIM FOR RELIEF**
**Failure to Provide Accurate Itemized Wage Statements and to Keep Proper Payroll Records**
**[Labor Code §§ 226, 226.3, 226.6, 1174, and 1174.5]**
**(Against All Defendants)**

98.     Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

99.     The foregoing conduct, as alleged, violates Labor Code § 226(a), which requires employers to provide employees with accurate itemized wage statements.  The wage statements Chevron and Labor Contractor Defendants, and Chevron and other labor contractors, provide to Plaintiffs and the Class omit their hours worked and compensation earned for those hours, including omissions of hours and compensation, starting from the time Defendants require Plaintiffs and the Class to report to designated parking lots for employer-mandated travel at the start of their workday to the time they are able to depart from designated parking lots after employer-mandated travel at the end of their workday, and all other pre- and post-shift hours worked, and for excessive time docked.  Thus, the wage statements Chevron and Labor

22

Contractor Defendants, and Chevron and other labor contractors, provide to Plaintiffs and the Class do not accurately itemize their gross wages earned, their total hours worked, their net wages earned, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.  Defendants' violations of Labor Code § 226(a) also make them liable for the civil penalties under Labor Code § 226.3.

100.    Plaintiffs and the Class suffered injury due to Defendants' failure to provide them with accurate itemized wage statements because Plaintiffs and the Class could not promptly and easily determine from their wage statements alone their total hours worked and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

101.    Defendants' failure to provide Plaintiffs and the Class with accurate itemized wage statements was knowing and intentional and was not the result of an isolated and unintentional payroll error due to a clerical or inadvertent mistake, thus violating Labor Code §§ 226 and 226.6.

102.    Defendants do not keep payroll records showing the hours worked daily by Plaintiffs and Class members, thus violating Labor Code § 1174(d).  Defendants' failure to maintain these records is willful, thus violating Labor Code § 1174.5.

103.    Pursuant to Labor Code § 226(e), Plaintiffs, on behalf of themselves and the Class, seek to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), as well as costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**Failure to Pay All Wages Each Payday**
**[Labor Code §§ 204, 204b, and 2810.3]**
**(Against All Defendants)**

104.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL
CASE NO. 4:19-CV-07624-JSW

105.    Labor Contractor Defendants, and other contractors served as "labor contractors" under § 2810.3 by providing workers to perform labor within the usual course of Chevron's business.

106.    As a "client employer" under § 2810.3, Chevron shares with Labor Contractor Defendants and its other labor contractors all civil legal responsibility and civil liability for the payment of wages with respect to workers supplied by those labor contractors.

107.    Employers are required to pay all wages earned to employees each payday. Because Defendants do not pay Plaintiffs and the Class for all wages earned, either at their regular rate of pay or at the minimum wage, Defendants do not pay them all wages earned each payday, thus violating Labor Code § 204 and/or Labor Code § 204b.

### SIXTH CLAIM FOR RELIEF
**Timely Wage Payment Due upon Termination Claim—**
**[Labor Code §§ 201, 202 & 203, 2810.3]**
**(Against All Defendants)**

108.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

109.    Labor Code §§ 201 and 202 require employers to pay their employees all wages due upon termination within the time specified by law.  Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must pay waiting time penalties of the subject employees' daily wage, up to a maximum of thirty days of wages.

110.    Labor Contractor Defendants, and other contractors served as "labor contractors" under § 2810.3 by providing workers to perform labor within the usual course of Chevron's business.

111.    As a "client employer" under § 2810.3, Chevron shares with Labor Contractor Defendants and its other labor contractors all civil legal responsibility and civil liability for the payment of wages with respect to workers supplied by those labor contractors.

112.    Plaintiffs and Class members who have ceased employment with Chevron and Labor Contractor Defendants, or Chevron and other labor contractors, are entitled to unpaid wages as described herein, but to date, Defendants have not paid such wages.

24

113.   More than thirty days have passed since Plaintiffs and certain Class members left the employ of Chevron and Labor Contractor Defendants, or Chevron and other labor contractors.

114.   Plaintiffs, on behalf of themselves and the Class members who have left Defendants' employ, seeks thirty days of waiting time penalties pursuant to Section 203.

**SEVENTH CLAIM FOR RELIEF**
**Unfair Competition**
**[Business and Professions Code §§ 17200, *et seq.*]**
**(Against All Defendants)**

115.   Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference all other paragraphs as if they were set forth again herein.

116.   The foregoing conduct, as alleged, violates the Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq.*  The UCL prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

117.   Beginning at a date unknown to Plaintiffs, but at least as long as four years ago, Defendants committed, and continue to commit, acts of unfair competition, as defined by the UCL, by, *inter alia*, engaging in the acts and practices described herein.  Defendants' conduct as herein alleged has injured Plaintiffs and the Class by wrongfully denying them earned wages, including unpaid wages for pre-shift and post-shift work time, unpaid wages for employer-mandated travel time, donning time, docking employees in excessive time increments, and all other hours worked.

118.   Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia*, Labor Code §§ 201, 202, 203, 204, 204b, 226, 226.3, 226.6, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.  Each of these violations constitutes an independent and separate violation of the UCL, and such conduct by Defendants threatens or harms competition.

119.   Defendants' unlawful and unfair business practices and acts, described above, have injured Plaintiffs and the Class as a result of Defendants' retention of wages owed to them. Defendants have reaped unfair and illegal profits by retaining these wages from Plaintiffs and the

1    Class.  Defendants should be required to disgorge these unfair and illegal profits and restore them

2    to Plaintiffs and the Class.

3        120.    Defendants' unfair and unlawful business practices entitle Plaintiffs to seek

4    preliminary and permanent injunctive relief, including but not limited to orders that Defendants

5    cease the unlawful practices alleged herein, and account for, disgorge, and restore to Plaintiffs

6    and the Class the wages and other compensation unlawfully withheld from them.  Plaintiffs and

7    the Class are entitled to restitution of all monies to be disgorged from Defendants in an amount

8    according to proof at the time of trial.  Plaintiffs seek all such restitution on behalf of themselves

9    and the Class.

**EIGHTH CLAIM FOR RELIEF**
**Private Attorneys General Act Violations**
**[Labor Code §§ 2698, *et seq.*]**
**(Against Chevron and Newtron)**

12        121.    Clayborne, on behalf of himself and all aggrieved employees of PAGA

13   Defendants, realleges and incorporates by reference all other paragraphs as if they were set forth

14   again herein.

15        122.    Pursuant to Labor Code § 2699(c), an "'aggrieved employee' means any person

16   who was employed by the alleged violator and against whom one or more of the alleged

17   violations was committed."  PAGA provides that any provision of law under the Labor Code that

18   sets forth a civil penalty to be assessed and collected by the Labor and Workforce Development

19   Agency ("LWDA"), may, as an alternative, be recovered through a civil action brought by an

20   aggrieved employee on behalf of himself or herself and other current or former employees

21   pursuant to the procedures outlined in Labor Code § 2699.3.

22        123.    As a result of the California Labor Code violations that PAGA Defendants

23   committed against Clayborne and other current and former employees of PAGA Defendants,

24   including California Labor Code violations that Chevron committed against current and former

25   employees provided by labor contractors other than Newtron,  Clayborne and his fellow

26   employees of PAGA Defendants and of Chevron and other labor contractors,  are all "aggrieved

27   employees" of PAGA Defendants within the definition of Labor Code § 2699(c).  As an

28

26

aggrieved employee, Clayborne seeks, on behalf of himself and his fellow aggrieved employees of PAGA Defendants and on behalf of the State of California, to recover civil penalties from PAGA Defendants under Labor Code §§ 2699, 210, 226.3, 558, 1174.5, and 1197.1, and Wage Order 16, § 18 for Defendants' Labor Code violations set forth above, including PAGA Defendants' violations of Labor Code §§ 201, 202, 203, 204, 204b, 226(a), 226.6, 558.1, 1174(c) and (d), 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.

124.    Pursuant to Labor Code § 2699.3, an aggrieved employee may commence a civil action arising under Labor Code § 2699 after the following requirements have been met:

a.    The aggrieved employee or representative shall give written notice by filing online with the LWDA and by certified mail to the employer of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.  A $75 filing fee should accompany the notice.

b.    For violations of any provision listed in Labor Code § 2699.5, the LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received.  Upon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice, the aggrieved employee may commence a civil action pursuant to Section 2699.  For violations of any provision other than those listed in Labor Code § 2699.5 or Division 5, the aggrieved employee may commence a civil action pursuant to Section 2699 if the employer has not cured the violations within 33 calendar days of the postmark date of the notice.

125.    On or about July 17, 2019, Clayborne gave timely written notice by certified mail to PAGA Defendants of PAGA Defendants' violations of Labor Code §§ 201, 202, 203, 204, 204b, 218.5, 226(a), 226.3, 226.6, 558, 558.1, 1174(c) and (d), 1174.5, 1194, 1194.2, 1197, 1197.1, and 1199, and Wage Order 16 alleged in this Complaint, including the facts and theories to support the alleged violations, and Clayborne filed the notice online with the LWDA.

1  Clayborne also paid the accompanying filing fee of $75.00.  Clayborne has complied with all

2  notice and exhaustion procedures as required by PAGA.[1]

3      126.    The LWDA did not provide notice of its intention to investigate PAGA

4  Defendants' violations of provisions listed in Labor Code § 2699.5 by the expiration of the 65-

5  day waiting time period.  PAGA Defendants have not cured the violations of provisions other

6  than those listed in Labor Code § 2699.5 or Division 5 by the expiration of the 33-day period.

7  Consequently, Clayborne's right to file the instant lawsuit then duly accrued.

8      127.    Therefore, Clayborne has complied with all of the requirements set forth in Labor

9  Code § 2699.3 to commence a representative action under PAGA.

10      128.    Clayborne, on behalf of himself, his fellow aggrieved employees, and on behalf of

11  the State of California, seeks civil penalties under PAGA, 75% of which will be distributed to the

12  State of California, and 25% of which will be distributed to Clayborne and his fellow aggrieved

13  employees.  Under this PAGA action, Clayborne is also entitled to an award of reasonable

14  attorney's fees and costs.

15      129.    Pursuant to Labor Code § 2699, Clayborne is entitled to recover civil penalties in

16  the amount of one hundred dollars ($100) for each aggrieved employee per pay period for the

17  initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for

18  each subsequent violation, for PAGA Defendants' violations of Labor Code §§ 201, 202, 203,

19  204, 204b, 226(a), 226.6, 558.1, 1174(c) & (d), 1194, 1194.2, 1197, 1197.1, and 1199, and Wage

20  Order 16, as well as the civil penalties specifically provided in Labor Code §§ 2699, 210, 226.3,

21  558, 1174.5, and 1197.1, and Wage Order 16, § 18, plus reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

22

23      WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for relief as

24  follows:

25      A.    Certification of the Class;

26

27  [1] On September 27, 2019, Clayborne filed an Amended PAGA Claim Notice with the LWDA and mailed the notice to Defendants, adding Labor Code section 210 to the Labor Code statutes violated by Defendants.

28

1          B.      Designation of Plaintiffs as Class representatives and Plaintiffs' counsel of record

2     as Class Counsel;

3          C.      Recognition of Clayborne as PAGA representative and Clayborne's counsel of

4     record as PAGA Counsel for the aggrieved employees and on behalf of the State;

5          D.      A declaratory judgment that the practices complained of herein are unlawful and

6     violate Wage Order 16, the California Labor Code, and the UCL;

7          E.      A declaratory judgment that Defendant Chevron is a "client employer" for

8     purposes of California Labor Code § 2810.3 and thus shares all civil legal responsibility and civil

9     liability for the wages of workers whose labor was supplied by Newtron, PMI, Harder, CTS,

10    SWAT or other labor contractors;

11         F.      A preliminary and permanent injunction against Defendants and their officers,

12    agents, successors, employees, representatives, and any and all other persons acting in concert

13    with them, from engaging in each of the unlawful policies, practices, customs and usages set forth

14    herein;

15         G.      An award of damages according to proof;

16         H.      Statutory penalties;

17         I.      Civil penalties pursuant to PAGA;

18         J.      Restitution pursuant to Business & Professions Code §§ 17200 *et seq.* according to

19    proof;

20         K.      Pre-judgment and post-judgment interest, as provided by law;

21         L.      Attorneys' fees, pursuant to Labor Code §§ 218.5, 226(e), 1194, and 2699, Code

22    of Civil Procedure § 1021.5, and all other bases for fees under the law;

23         M.      Costs of suit, including expert fees and costs, pursuant to Labor Code §§ 218.5,

24    226(e), 1194, and 2699, Code of Civil Procedure § 1021.5, and all other bases for costs under the

25    law;

26         N.      An appropriate service payment to Plaintiffs for their service as Class

27    representatives and Clayborne for his service as the PAGA representative; and

28

1      O.    Such other and further legal and equitable relief as the Court may deem just and

2  proper.

3                          **DEMAND FOR JURY TRIAL**

4      Plaintiffs hereby demand a jury trial on all causes of action and claims alleged herein.

5

6

7  Dated:  December 2, 2020                Respectfully submitted,

8

9                                          By: _____

10                                         Jahan Sagafi (Cal. Bar No. 224887)

11                                         Moira Heiges-Goepfert (Cal. Bar No. 326861)
                                           OUTTEN & GOLDEN LLP
12                                         One California Street, 12th Floor
                                           San Francisco, CA 94111
13                                         Telephone: (415) 638-8800
                                           Facsimile: (415) 638-8810
14                                         Email: jsagafi@outtengolden.com
                                           Email: mhg@outtengolden.com
15
                                           Steven Elster (Cal Bar. No. 227545)
16                                         LAW OFFICE OF STEVEN ELSTER
                                           785/E2 Oak Grove Road, No. 201
17                                         Concord, CA 94518
                                           Telephone: (925) 324-2159
18                                         E-Mail: steve.elster.law@gmail.com

19                                         *Attorneys for Plaintiffs and Class Members*

20

21

22

23

24

25

26

27

28
                                           30