Jahan C. Sagafi (SBN 224887)
jsagafi@outtengolden.com
Moira Heiges-Goepfert (SBN 326861)
mhg@outtengolden.com
Kaelyn Mahar (SBN 338257)
kmahar@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Steven Elster (SBN 227545)
steve.elster.law@gmail.com
LAW OFFICE OF STEVEN ELSTER
785/E2 Oak Grove Road, #201
Concord, CA 94518
Telephone: (925) 324-2159

*Attorneys for Plaintiffs and Proposed Class Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SHAWN CLAYBORNE, an individual, on behalf of himself, all others similarly situated, and all other aggrieved employees; DAVID POOL, an individual, on behalf of himself and all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CHEVRON U.S.A. INC., NEWTRON LLC, PERFORMANCE MECHANICAL, INC., SPECIALTY WELDING AND TURNAROUNDS, LLC, and DOES 1-100, inclusive,<br><br>DEFENDANTS. | Case No. 4:19-cv-07624-JSW-KAW<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Hearing Date: March 3, 2023<br>Time:          9:00 a.m.<br>Courtroom:  Courtroom 5, 2nd Floor<br>Judge:        Hon. Jeffrey S. White |

## NOTICE OF UNOPPOSED MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on March 3, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, before the Honorable Jeffrey S. White, Plaintiff Shawn Clayborne hereby does and will move the Court to: (1) conditionally certify a settlement class, (2) preliminarily approve the parties' proposed class and representative action settlement, including approving the forms of notice to the Class Members and Aggrieved Employees; and the selection of JND Legal Administration as Settlement Administrator, (3) appoint Plaintiff Shawn Clayborne as the Class and PAGA Representative and appoint his counsel as Class and PAGA Counsel, and (4) schedule a hearing on the final approval of the Settlement.

Plaintiff makes this unopposed motion on the grounds that the Settlement is the product of protracted, zealous, arm's-length, good-faith negotiations under the supervision of Chief Magistrate Judge Joseph C. Spero, and the Settlement is fair, adequate, and reasonable and within the range of possible final approval, and should be preliminarily approved, as discussed in the attached memorandum.

This motion is based upon this Notice of Motion for Preliminary Approval of Class and PAGA Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing, and the following Memorandum; the accompanying Declaration of Jahan C. Sagafi, Declaration of Steven Elster, and Declaration of Gretchen Eoff; and Proposed Order: (1) Preliminarily Approving Proposed Settlement, (2) Conditionally Certifying Settlement Class, (3) Appointing Class and PAGA Representative, Class and PAGA Counsel, and Settlement Administrator, (4) Approving Forms of Notice to Class and Aggrieved Employees of Settlement, and (5) Setting Hearing for Final Approval; the Court's record of this action; all matters of which the Court may take notice; and such oral or documentary evidence presented at the hearing on the motion.

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................- 1 -

II.  BACKGROUND ...................................................................................................- 1 -

    A.   Factual Background .................................................................................- 1 -

    B.   Procedural Background............................................................................- 2 -

    C.   Negotiation and Settlement.....................................................................- 2 -

III. THE PROPOSED SETTLEMENT ......................................................................- 3 -

    A.   Settlement Class......................................................................................- 3 -

    B.   Settlement Fund ......................................................................................- 3 -

    C.   Notice Procedure.....................................................................................- 5 -

    D.   Class Representative Service Award to Be Requested in Fee Motion .........................- 5 -

    E.   Attorneys' Fees and Costs to Be Requested in Fee Motion ...........................................- 7 -

    F.   Cy Pres Beneficiaries for Unclaimed Funds...........................................- 7 -

    G.   Appointment of Class Representative and Class Counsel ...........................................- 8 -

IV.  ARGUMENT.........................................................................................................- 8 -

    A.   Certification of the Rule 23 Classes Is Proper. .......................................- 8 -

        1.   Rule 23(a) Is Satisfied..................................................................- 8 -

        2.   Certification Is Proper Under Rule 23(b)(3)..................................- 10 -

        3.   Plaintiffs' Counsel Should Be Appointed as Class Counsel..........................- 11 -

    B.   The Settlement Is Fair, Reasonable, And Adequate. ..............................- 11 -

        1.   Plaintiff Faces Significant Hurdles on Class Certification. ............................- 12 -

        2.   The Settlement Amount Is Appropriate.........................................- 13 -

          a.     The Newtron Portion of the Settlement Is Reasonable. ....................- 14 -

          b.     Chevron's Portion of the Settlement, Covering Workers Employed by 3PCs, Is Reasonable. .....................................................................- 15 -

          c.     The PAGA Allocation Is Reasonable. ..................................................- 15 -

      3.     The Extent of Discovery Supports Settlement. ................................................- 16 -

      4.     Counsel's Experience and Views Support Approval. ......................................- 16 -

      5.     The Parties Participated in Arm's-Length Negotiations Before Chief Magistrate Judge Joseph C. Spero. ................................................................- 17 -

  C.     The Proposed Notices Are Clear and Adequate. .........................................................- 17 -

V.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. ........................................- 18 -

VI.     CONCLUSION ...................................................................................................................- 19 -

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, NO. 19-cv-07624

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                                      **PAGE(S)**

3

*Amchem Prods., Inc. v. Windsor,*

4
    521 U.S. 591 (1997) ..................................................................................................9, 10, 11

5
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ............................................................................................... 10

6

*Betancourt v. Advantage Human Resourcing, Inc.,*

7
    No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) .................................. 12

8
*Brawner v. Bank of Am. N.A.,*

9
    No. 14- cv-02702-LB, 2016 U.S. Dist. LEXIS 4975 (N.D. Cal. Jan. 14, 2016) .............................. 6

10
*Cancilla v. Ecolab, Inc.,*
    No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249 (N.D. Cal. Aug. 12, 2015) .................................. 12

11
*Churchill Vill., LLC v. GE,*

12
    361 F.3d 566 (9th Cir. 2004) ................................................................................... 17-18

13
*Cotter v. Lyft, Inc.,*
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................................... 13

14
*Cotter, Lyft, Inc.,*

15
    193 F. Supp. 3d 1030, 1037 (N.D. Cal 2016) ................................................................ 15

16
*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ..................................................................................... 14

17
*DiMercurio v. Equilon Enters. LLC,*

18
    No. 19-cv-04029-JSC, 2022 U.S. Dist. LEXIS 225426 (N.D. Cal. Dec. 14, 2022) .......................... 15

19
*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
    213 F.3d 454 (9th Cir. 2000) ................................................................................... 16

20

*Dyer v. Wells Fargo Bank, N.A.,*

21
    303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................... 6

22
*Galeener v. Source Refrigeration & HVAC, Inc.,*
    No. 13-cv-04960, 2015 U.S. Dist. LEXIS 193092 (N.D. Cal. Aug. 20, 2015) .................................. 6

23

24
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 8, 9, 12

25
*Harvey v. Morgan Stanley Smith Barney LLC,*

26
    No. 18-cv-02835, 2019 U.S. Dist. LEXIS 159258 (N.D. Cal. Sep. 5, 2019) .................................. 14

27
*Johnson v. Triple Leaf Tea Inc.,*
    No. 14-cv-1570, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) .................................. 7, 9

28

*Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................................ 7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 8, 16

*In re Omnivision Techs.*,
    Inc., 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 14

*Overton v. Hat World, Inc.*,
    No. 11-cv-01645, 2012 U.S. Dist. LEXIS 144116 (E.D. Cal. 2012) .............................. 18

*Parker v. Cherne Contracting Corp.*,
    No. 18-cv-1912, 2020 U.S. Dist. LEXIS 218187 (N.D. Cal. Nov. 20, 2020) ............. 12, 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................... 12, 16

*Roes*, 1-2 *v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................................ 1

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
    906 F.3d 747 (9th Cir. 2018) .......................................................................................... 7

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) ................................................................................. 14

*Slavkov v. Fast Water Heater Partners I, LP*,
    No.14-cv-04324-JST, 2017 U.S. Dist. LEXIS 116303 (N.D. Cal. July 25, 2017) ........... 16

*Thio v. Genji, LLC*,
    14 F. Supp. 3d 1324 (N.D. Cal. 2014) ......................................................................... 16

*Tierno v. Rite Aid Corp.*,
    No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ............... 11

*Tijero v. Aaron Bros.*,
    301 F.R.D. 314 (N.D. Cal. 2013) ................................................................................. 17

*Torres v. Pick-A-Part Auto Wrecking*,
    No. 1:16-cv-01915-DAD-BAM, 2018 U.S. Dist. LEXIS 2446 (E.D. Cal. Jan. 5, 2018) ................. 14

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................................... 11

*Walsh v. CorePower Yoga LLC*,
    No. 16-cv-05610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb 14, 2017) .............. 10, 12

*Walton v. AT&T Servs.*,
    No. 15-cv-03653, 2018 U.S. Dist. LEXIS 245928 (N.D. Cal. Feb. 14, 2018) .................. 6

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 13, 2006) ................................... 18

*Williams v. Superior Court*,
    3 Cal. 5th 531 (2017) ........................................................................................................ 1

*Zamora v. Lyft, Inc.,* ,
    No. 16-cv-02558, 2018 U.S. Dist. LEXIS 166618 (N.D. Cal. Sep. 26, 2018) .................................. 10

**Statutes**

Cal. Labor Code § 203 .................................................................................................... 13

Cal. Labor Code § 204 .................................................................................................... 13

Cal. Labor Code § 226 .................................................................................................... 13

Cal. Labor Code § 1174.5 ................................................................................................ 13

Cal. Labor Code § 1197 .................................................................................................. 13

Cal. Labor Code § 2699 .................................................................................................... 1

Cal. Labor Code § 2810.3 .................................................................................................. 2

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**Other Authorities**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11:22 (4th ed. 2002). ....................... 8

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13.15 (5th ed.)............................... 12

*Illustrative Forms of Class Action Notices: Overview,* Fed. Judicial Ctr. ................................................ 17

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004). ............................................... 8

Northern District of California, *Procedural Guidance for Class Action Settlements* ................................ 1

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

### I.    INTRODUCTION

Plaintiff Shawn Clayborne ("Plaintiff")[1] respectfully seeks preliminary approval of a $1,925,000 common fund settlement of this class and PAGA action on behalf of approximately 10,000 individuals ("Class Members") as set forth in the parties' Stipulation of Settlement and Release ("Settlement" or "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Jahan C. Sagafi ("Sagafi Decl."). The Settlement will resolve all claims against Defendants Chevron U.S.A. Inc. ("Chevron") and Newtron, L.L.C. ("Newtron") ("Defendants") in Plaintiff's Third Amended Complaint ("TAC"), for payments of $1,700,000 by Chevron and $225,000 by Newtron.

The proposed settlement readily satisfies Rule 23 and applicable authority. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-50, 1060 (9th Cir. 2019) (requirements of Fed. R. Civ. P. 23); *Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017) (requirements of Cal. Lab. Code § 2699(l)(2)); Northern District of California, *Procedural Guidance for Class Action Settlements*, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last modified Aug. 4, 2022). The parties have zealously litigated the case, with substantial formal and informal fact discovery, two days of settlement conferences and many additional conferences supervised by Chief Magistrate Judge Spero, spanning more than one year of settlement negotiations before and after the settlement in principle was reached. As described below, the Settlement merits preliminary approval.

### II.    BACKGROUND

#### A.    Factual Background

Chevron operates petroleum refineries in Richmond and El Segundo, California. Newtron and other third-party labor contracting companies ("3PCs") provide workers to staff these refineries. TAC ¶¶ 17, 30. Plaintiff, Class Members,[2] and PAGA Group members ("Covered Workers") performed this work at Chevron's California refineries. *Id.* ¶¶ 29-39. The complaint alleges that Chevron is liable both

---

[1] Plaintiff David Pool has settled individually with Defendant Performance Mechanical, Inc. ("PMI"), and his claims against Defendant Specialty Welding and Turnarounds, LLC ("SWAT") are stayed pending finality of a class settlement that will release his claims as to SWAT. Plaintiff Pool will separately file documents with this Court to effectuate a dismissal of his claims.

[2] Capitalized terms are used as defined in the Settlement Agreement.

as a joint employer (together with Newtron and the 3PCs) and a "client-employer" under Cal. Labor Code § 2810.3, based on allegations that Chevron controlled their work in the usual course of business.

Specifically, Plaintiffs alleged that Chevron's uniform policies and practices prohibit Covered Workers from driving their personal vehicles past Chevron's security gates or parking inside Chevron's refineries, instead requiring them to park in designated parking lots outside the refinery gates and to spend significant time being transported into the refinery to reach their worksites within the refinery. *Id.* ¶¶ 40, 51. Once Covered Workers are dropped off at locations within Chevron's refineries, Defendants and 3PCs distribute personal protective equipment ("PPE") to Covered Workers for them to don pre-shift. *Id.* ¶¶ 36, 41-42. This time is uncompensated. *Id.* ¶ 41.

### B. Procedural Background

In September 2019, Plaintiff Shawn Clayborne filed this action in Contra Costa County Superior Court. After removal, jurisdictional discovery, the Court's denial of Plaintiff's motion to remand, and additional complaint amendments, the operative complaint is the TAC. ECF No. 105. The TAC asserts class and PAGA claims for off-the-clock work, unlawful deductions of wages for late employees, unpaid minimum wages, wage statement violations, failure to pay wages each payday, failure to pay wages due on termination, and resulting Unfair Competition Law and PAGA claims.

### C. Negotiation and Settlement

In addition to dispositive motion practice, the parties engaged in extensive formal and informal discovery, including the review and exchange of policy documents, emails, data, and other relevant documents. Sagafi Decl. ¶¶ 17-20. From approximately November 2020 to October 2022, the parties engaged in extensive settlement talks under the supervision of Chief Magistrate Judge Joseph C. Spero. *Id.* ¶¶ 21-25. They exchanged additional data, detailed mediation statements, and damages calculations, then attended an all-day conference with Judge Spero on July 27, 2021. *Id.* ¶ 22. They continued intensive negotiations while litigation proceeded. *Id.* ¶ 23. The parties reached a settlement in principle at a second settlement conference on February 15, 2022. *Id.* ¶ 24. The parties continued negotiating the details of the settlement, with seven additional conferences with Judge Spero, until finalizing the Settlement Agreement on December 29, 2022. *Id.* ¶¶ 25-26.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    THE PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Settlement Agreement, attached as Exhibit 1 to the Sagafi Declaration.  A summary is set forth below.

#### A.    Settlement Class

Subject to Court approval, the Settlement Class comprises (a) "Participating Class Members," defined as those individuals in the Class who have not timely and properly opted out of the Class, where "Class" means those individuals who performed work from September 20, 2015 through the date of the preliminary approval of the settlement (the "Class Liability Period") at Chevron's El Segundo and/or Richmond, California refineries as hourly workers employed by Newtron or by a 3PC, and (b) the "PAGA Group," defined as individuals who performed work from July 17, 2018 through the date of the preliminary approval (the "PAGA Liability Period") at Chevron's El Segundo and/or Richmond, California refineries as hourly workers employed by Newtron or by a 3PC.  Sagafi Decl. Ex. 1, § II.A.

The Class size is estimated to be approximately 10,000 individuals, including approximately 2,500 individuals in the PAGA Group.  Sagafi Decl. ¶ 30.  This estimate is based on data provided by approximately ten 3PCs to Chevron in response to Chevron's subpoenas (which resulted from a process negotiated by the parties, overseen by Judge Spero).  *Id.* ¶¶ 21, 30.[3]

#### B.    Settlement Fund

The $1,925,000 Gross Settlement Fund will cover: (a) the Class Fund for Settlement Payments to Participating Class Members; (b) the PAGA Fund of $115,000 (with 75%, or $86,625, paid to the California Labor and Workforce Development Agency ("LWDA") and 25%, or $28,875, paid to the PAGA Group); (c) a Named Plaintiff Service Award of up to $15,000 for Plaintiff Shawn Clayborne, as awarded by the Court; (d) Class Counsel's attorneys' fees of up to 35% of the Settlement Amount

---

[3] Based on that sample, there are an average of 189 Class Members per 3PC.  Extrapolating to 76 contractors yields a total of 14,364, but the correct figure is likely closer to 10,000, or lower, because many of the non-responding 3PCs likely (a) are smaller than average, (b) have no workers in the relevant time period, (c) have no practice of employer-mandated transportation and therefore lower or no liability under the main theory of the case, or (d) consistently pay for pre- and post-shift donning and travel time.  Sagafi Decl. ¶ 30, Ex. 1, App. A.

($673,750), as awarded by the Court; (e) litigation costs and expenses up to $45,000, as awarded by the Court; and (f) settlement administration costs expected to be $90,000. *Id.* ¶ 27, Ex. 1 § II.D.

The Settlement Allocation of the Class Fund provides:

1. <u>Newtron PAGA Portion</u>. Each Participating Class Member's share of the PAGA Fund shall be calculated as the number of workweeks the individual worked for Newtron at Chevron's California refineries during the PAGA Liability Period divided by the total aggregate workweeks worked by all Participating Class Members for Newtron at Chevron's California refineries times the Newtron portion of the PAGA Fund;

2. <u>Newtron Class Portion</u>. Each Participating Class Member's share of the Class Fund shall be calculated as the number of workweeks the individual worked for Newtron at Chevron's California refineries during the Class Liability Period divided by the total aggregate workweeks worked by all Participating Class Members for Newtron at Chevron's California refineries times the Newtron portion of the Class Fund;

3. <u>Non-Newtron PAGA Portion</u>. Each Participating Class Member's share of the PAGA Fund shall be calculated as the number of workweeks the individual worked for one or more of Chevron's 3PCs during the PAGA Liability Period divided by the total aggregate workweeks worked by all Participating Class Members for one or more of Chevron's 3PCs times the PAGA Fund; and

4. <u>Non-Newtron Class Portion</u>. Each Participating Class Member's share of the Class Fund shall be calculated as the number of workweeks the individual worked for one or more of Chevron's 3PCs during the Class Liability Period divided by the total aggregate workweeks worked by all Participating Class Members for one or more of Chevron's 3PCs times the Class Fund.

Sagafi Decl. Ex. 1, § II.D.3.

In exchange for the monetary consideration described above, each Participating Class Member will release both Defendants of all claims arising out of the dispute that is the subject of the Action or that could have been asserted in the Action based on the allegations in the pleadings regarding events that occurred or are alleged to have occurred, including allegations pertaining to minimum wage, off-the-clock work, overtime, hours of work, wage statements, record-keeping requirements, payment of wages, or payment of final wages, and including without limitation all federal claims (including FLSA), state claims (including any claims under the California Labor Code and PAGA), and local claims that were asserted or could have been asserted in this Action based on the allegations in the pleadings regarding events that occurred or are alleged to have occurred during the PAGA Liability Period as to PAGA claims and the Class Liability Period as to Class claims ("Released Claims"). *Id.*, § II.I. Notably,

1    Participating Class Members *will not release* any related claims against the 3PCs who directly employed

2    them. *Id.*

3         The Settlement Administrator estimates that its fees and costs will be approximately $90,000.

4    Sagafi Decl. ¶ 48.  Plaintiff sought bids from four settlement administrators before selecting JND Legal

5    Administration ("JND"), an administrator with significant expertise, skill, and experience. *Id.* ¶¶ 44-45.

6    JND's bid was substantially lower than its competitors' bids. *Id.* ¶ 43.  In addition, JND has addressed

7    the Data Protection Checklist provided by the District Court. *See* Declaration of Gretchen Eoff in

8    Support of Plaintiff's Motion for Preliminary Approval.

9         **C.    Notice Procedure**

10        Within thirty days of entry of the Preliminary Approval Order, Defendants shall provide the

11   Settlement Administrator with all available contact information for all Class Members and PAGA Group

12   Members.  Sagafi Decl. Ex. 1, § II.F.7.a.  If any Covered Worker needs assistance from counsel, the

13   Settlement Administrator shall refer them to Class Counsel, so that Class Counsel may assist Covered

14   Workers in understanding their rights and options. *Id.*

15        The Notice of Settlement shall be sent by the Settlement Administrator to the Covered Workers,

16   in English, by first-class mail and email. *Id.* § II.F.7.b.  To the extent that Defendants identify a Covered

17   Worker but cannot find a mailing address or email address for them, or to the extent a mailed or emailed

18   Notice is returned, Defendants will make reasonable efforts to identify a phone number for the Covered

19   Workers so that the Notice can be sent via text message. *Id.*  A Spanish version of the Notice of

20   Settlement will be available to Covered Workers upon request. *Id.*  Covered Workers will have forty-

21   five days from the Notice mailing date to object to the Settlement, and Class Members will have the

22   same amount of time to opt out. *Id.* § II.B.13.  Consistent with PAGA procedures, PAGA Group

23   Members will not be able to opt out, but they will be able to object. *Id.* § II.F.3.a.  All Settlement funds

24   will be paid out, i.e., there is no reversion to Defendants.  Sagafi Decl. ¶ 31.

25        **D.    Class Representative Service Award to Be Requested in Fee Motion**

26        Under the Settlement, Plaintiff Shawn Clayborne will request a Class Representative Service

27   Award of $15,000.  Sagafi Decl. Ex. 1, § II.D.6.a.  Plaintiffs will present evidence and argument

28

NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT NO. 19-cv-07624

1    supporting this award as reasonable, beneficial to the Class, and supportive of law enforcement with the

2    fee motion.

3    Courts in this District traditionally approve service awards of this amount and more based on

4    several factors: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree

5    to which the class has benefitted from those actions, (3) the time and effort that representatives put into

6    the litigation, and (4) the reasonable fears of workplace retaliation.  *See Dyer v. Wells Fargo Bank,*

7    *N.A.*, 303 F.R.D. 326, 334-35 (N.D. Cal. 2014) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th

8    Cir. 2003)); *see also Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13-cv-04960, 2015 U.S.

9    Dist. LEXIS 193092, at *11 (N.D. Cal. Aug. 20, 2015) (approving service awards of $27,000, $25,000,

10   and $15,000); *Walton v. AT&T Servs.*, No. 15-cv-03653, 2018 U.S. Dist. LEXIS 245928, at *8 (N.D.

11   Cal. Feb. 14, 2018) (approving $20,000 award); *Brawner v. Bank of Am. N.A.*, No. 14- cv-02702-LB,

12   2016 U.S. Dist. LEXIS 4975, at *15-16 (N.D. Cal. Jan. 14, 2016) (approving $15,000 award).

13   The proposed service award here is reasonable in light of (a) the value created by Plaintiff in

14   initiating and prosecuting this action (factor two, above), (b) the effort and time he invested to pursue

15   claims on behalf of all Covered Workers (factors one and three), and (c) the risks he incurred of adverse

16   action from potential employers, business partners, landlords, and others by virtue of serving as the

17   public face of adversarial litigation against his alleged employer (factor four, as well as broader

18   considerations).

19   First, Plaintiff made this Settlement possible.  If he had not stepped forward, the litigation would

20   not have occurred, and the Class Members would likely be receiving nothing.  Second, Plaintiff spent

21   significant time providing information to assist Class Counsel with pre-suit investigation, guiding Class

22   Counsel's discovery requests and interpretation of Defendants' responses and documents, responding to

23   document requests, and staying apprised of developments in the case.  Sagafi Decl. ¶ 41.  Third, as the

24   lead named plaintiff, Plaintiff's name is prominently visible in public records.  A search of "Clayborne

25   Chevron" yields results for this litigation as the first five results on Google.  *Id.* ¶ 40.  Finally, in contrast

26   to other Class Members, Plaintiff signed a general release of claims.  Sagafi Decl. Ex. 1, § II.I.4.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.    Attorneys' Fees and Costs to Be Requested in Fee Motion**

Consistent with the Settlement Agreement, in their fee motion, Class Counsel will apply for attorneys' fees of 35% of the Gross Settlement Fund of $1,925,000 (i.e., $673,750), plus out-of-pocket costs incurred in prosecuting the action up to $45,000. *Id.* § II.D.4. Class Counsel's lodestar in this zealously litigated action is already over $1,481,000, reflecting over 2,400 attorney and paralegal hours, in addition to litigation costs of over $39,600. Sagafi Decl. ¶¶ 53-59; Declaration of Steven Elster in Support of Plaintiff's Motion for Preliminary Approval ("Elster Decl.") ¶ 12. These amounts do not account for future work to be performed to (1) secure preliminary approval, (2) oversee implementation of notice and respond to Covered Worker (and non-Covered Worker) inquiries during the notice period, (3) brief and argue final approval, and (4) oversee implementation of the Settlement and report to the Court regarding the final steps in the litigation, including the Post-Distribution Accounting required by the District Court's Guidance. Sagafi Decl. ¶ 54. Thus, the $673,750 requested fee reflects a "negative" lodestar multiplier of approximately 0.45x, which will further decrease during the coming months while Class Counsel continues to work for Covered Workers' benefit. *See Johnson v. Triple Leaf Tea Inc.*, No. 14-cv-1570, 2015 U.S. Dist. LEXIS 170800, at *24 (N.D. Cal. Nov. 16, 2015) (accounting for "future attorney time" in decision whether attorneys' fees were reasonable).

**F.    Cy Pres Beneficiaries for Unclaimed Funds**

The Settlement provides that any unclaimed funds from settlement checks that are not cashed after a reasonable time (despite Class Counsel's and the Settlement Administrator's efforts to reach class members and provide replacement checks where necessary) shall be provided to the East Bay Community Law Center ("EBCLC") and Neighborhood Legal Services of Los Angeles County ("NLSLA") in equal parts. Sagafi Decl. Ex. 1, § II.H.7. This approach comports with federal law. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (*cy pres* distribution is appropriate "for the limited purpose of distributing the unclaimed funds"); *Romero v. Perryman (In re Easysaver Rewards Litig.)*, 906 F.3d 747, 760-61 (9th Cir. 2018) (same). EBCLC and NLSLA provide legal services, including in the areas of economic justice and employment, to

1    underserved populations in the communities where the Covered Workers work (the San Francisco Bay

2    Area and the Los Angeles area, respectively).  Sagafi Decl. ¶ 31.

3    **G.      Appointment of Class Representative and Class Counsel**

4         Plaintiff proposes that he be appointed Class Representative and that his counsel – Jahan Sagafi,

5    Moira Heiges-Goepfert and Kaelyn Mahar of Outten & Golden LLP and Steven Elster of the Law Office

6    of Steven Elster – be appointed Class Counsel.

7    **IV.   ARGUMENT**

8         Settlement approval "involves a two-step process in which the Court first determines

9    whether a proposed class action settlement deserves preliminary approval and then, after notice is given

10   to class members, whether final approval is warranted." *Nat'l Rural Telecomm. Coop. v.*

11   *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation

12   §§ 21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: first, the court must

13   determine that the settlement class meets the requirements for class certification if it has not yet been

14   certified, Fed. R. Civ. P. 23(a), (b), and second, the court must determine that the settlement

15   is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

16   1025-26 (9th Cir. 1998).

17   **A.      Certification of the Rule 23 Classes Is Proper.**

18

19        For settlement purposes only, the parties agree to certification of the Class.  "The validity of use

20   of a temporary settlement class is not usually questioned."  Alba Conte & Herbert B. Newberg, 4

21   Newberg on Class Actions § 11:22 (4th ed. 2002).  The relevant factors also weigh in favor of

22   conditional certification for purposes of settlement.

23        **1.      Rule 23(a) Is Satisfied.**

24        <u>First</u>, numerosity is met because joinder of Class Members would be impractical.  Fed. R.

25   Civ. P. 23(a)(1).  Defendants estimate that Newtron and 3PCs provided thousands of hourly workers at

26   Chevron's refineries who will be Class Members.  Sagafi Decl. ¶ 30.

27

28

<u>Second</u>, commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit "construe[s]" this requirement "permissively." *Hanlon*, 150 F.3d at 1019. Even though proposed class members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)." *Id*. at 1019-20. Here, common issues include:

- Whether Defendants required Class Members to report to designated parking lots at the start of their workdays for employer-mandated travel to their worksites;

- Whether Defendants required Class Members to don special work clothing or protective gear prior to performing work on Chevron's premises;

- Whether Defendants compensated Class Members for all hours worked at the start of their workdays, including for employer-mandated travel and time spent donning special work clothing or protective gear;

- Whether Defendants compensated Class Members for all hours worked at the end of their workdays; and

- Whether California law requires Defendants to pay Class Members from the time Class Members are required to report to designated parking lots for employer-mandated travel at the start of their workdays until the time Class Members are able to depart the designated parking lots at the end of their workdays, and other hours worked at the start and end of their workdays.

TAC ¶ 51.

<u>Third</u>, typicality is satisfied. Rule 23 typicality requires a finding that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the rule's "permissive" standard, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Johnson*, 2015 U.S. Dist. LEXIS 170800, at *7 (quoting *Hanlon*, 150 F.3d at 1020). Here, the Class Representative is typical of the Class he proposes to represent because he asserts that he was subject to the same policies and practices of Defendants regarding compensation for all hours worked, including for employer-mandated travel time and pre-shift donning time.

<u>Fourth</u>, Plaintiff has fairly and adequately protected the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the class representative: (1) has common, and not antagonistic, interests with unnamed class members, and (2) will vigorously prosecute the interests of the class through qualified counsel. *Hanlon*, 150 F.3d at 1020; *cf. Amchem Prods., Inc. v. Windsor*, 521

1   U.S. 591, 625-27 (1997) (adequacy not satisfied where named plaintiffs' interests were in conflict with

2   absent class members').  Here, Plaintiff shares a common interest with the Class Members he seeks to

3   represent, in that they all allege that they suffered the same type of injury, and they share an interest in

4   vigorous prosecution.  Plaintiff has vigorously represented the interests of his fellow Class Members and

5   devoted substantial time to the prosecution of this action, including by providing extensive information

6   to counsel, responding to discovery, being prepared to sit for deposition, and having numerous phone

7   calls and meetings with counsel.  Sagafi Decl. ¶ 41.

8          In addition, Plaintiff is represented by adequate counsel.  Outten & Golden LLP and the Law

9   Office of Steven Elster have extensive experience litigating complex civil rights and employment class

10  actions and have vigorously prosecuted this action on behalf of Plaintiff and Class Members through

11  extensive motion practice and fact discovery.  *Id.* ¶ 12 (collecting cases); Elster Decl. ¶¶ 3-13 (collecting

12  cases and citing work on this case).  For example, in one case, Judge Chhabria found that Outten &

13  Golden "have capably and effectively represented the Settlement Class Members' interests," and praised

14  them for "their outstanding work on this case."  *Zamora v. Lyft, Inc.*, No. 16-cv-02558, 2018 U.S. Dist.

15  LEXIS 166618, at *10, (N.D. Cal. Sep. 26, 2018); *see also, e.g.*, *Walsh v. CorePower Yoga LLC*, No.

16  16-cv-05610, 2017 U.S. Dist. LEXIS 20974, at *24-25 (N.D. Cal. Feb 14, 2017) ("[Outten & Golden]

17  ha[s] a proven track record in the prosecution of class actions as they have successfully litigated and

18  tried many major class action cases.").  For these reasons, Class Counsel satisfy the adequacy

19  requirement of Rule 23(a).

20                  **2.       Certification Is Proper Under Rule 23(b)(3).**

21         Rule 23(b)(3) requires that common questions predominate over individual ones, and that

22  a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P.

23  23(b)(3).  Both requirements are met here.

24         The proposed Class is sufficiently cohesive to satisfy predominance.  *See Amchem*, 521 U.S. at

25  623 (Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

26  representation.").  Predominance does not require "that each element of [a plaintiff's] claim [is]

27  susceptible to classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)

28

(internal quotation marks and citation omitted).  Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted).  Here, Plaintiff challenges Defendants' alleged common policies and practices, such as those requiring Class Members to report to designated parking locations for employer-mandated transportation to Chevron's worksites and requiring Class Members to don PPE while off the clock.  These and other facts, and the legal questions they raise, predominate over any individual issues.  Superiority rests on factors like individual Class Members' desire to bring individual actions and the utility of concentrating the litigation in one forum.  Fed. R. Civ. P. 23(b)(3).  Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason."  *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794, at *33 (N.D. Cal. Aug. 31, 2006); *see also Amchem*, 521 U.S. at 615 (internal citation omitted).  Individual lawsuits from hundreds of plaintiffs, for modest damages, would be wasteful and inefficient for the court system.  *See, e.g.*, *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193, at *30 (N.D. Cal. Sept. 13, 2006).  Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) resources counsel can commit.  Fed. R. Civ. P. 23(g)(1)(A).  Class Counsel readily satisfy these criteria, as set forth above.  *See supra* § IV(A)(1); *see also* Sagafi Decl. ¶¶ 5-12, 17-25; Elster Decl. ¶¶ 3-13.

### B.    The Settlement Is Fair, Reasonable, And Adequate.

Once the Court has found class certification to be proper, the next step of the preliminary approval process is to assess whether the settlement is "fundamentally fair, adequate, and

reasonable." *Hanlon*, 150 F.3d at 1026.  Typically, the first-stage analysis looks for "obvious deficiencies," with preliminary approval being granted if the settlement is non-collusive and within the range of possible final approval. *Walsh*, 2017 U.S. Dist. LEXIS 20974, at *19 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[4]

When considering whether to grant approval, courts often "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (internal citations omitted).  Courts may also assess the following factors, which are assessed in greater detail at final approval.  These factors are: (1) "the strength of the plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," and "the risk of maintaining class action status throughout the trial," (2) "the amount offered in settlement," (3) "the extent of discovery completed and the stage of the proceedings," and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026 (internal citation omitted).

### 1.    Plaintiff Faces Significant Hurdles on Class Certification.

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361, at *11 (N.D. Cal. Jan. 28, 2016).  Here, Plaintiff faces substantial obstacles to classwide recovery.  Most notably, another court in this District recently denied certification of a class action raising similar claims involving pre-shift, employer-mandated travel time at Chevron's Richmond refinery.  *See Parker v. Cherne Contracting Corp.*, No. 18-cv-1912, 2020 U.S. Dist. LEXIS 218187, at *19 (N.D. Cal. Nov. 20, 2020) (ECF. No. 81).  While distinguishable, *Parker* was based on similar allegations as this case, and presents a significant obstacle to class certification.  Absent settlement, if class certification were to be denied here, as it was in *Parker*, each Class Member would have to pursue individual lawsuits to obtain damages.

---

[4] *See also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249, at *9 (N.D. Cal. Aug. 12, 2015) (focusing preliminary approval analysis on "noncollusive negotiations," the lack of "obvious deficiencies" or "preferential treatment," and being "with[in] the range of possible approval") (internal citations omitted); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.).

1

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant

preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement

offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation marks

omitted). Here, the monetary relief provides strong value to the Covered Workers.

Based on corresponding data produced by Newtron and Chevron covering approximately 300

Newtron employees, the maximum exposure for Newtron Class Members is approximately $2.37

million, taking into account 27.6 minutes of off-the-clock work per employee per shift and an average

hourly rate of pay of $55.38 per employee. Sagafi Decl. ¶ 32. This figure includes all potential non-

PAGA damages and penalties – for unpaid wages, wage statement penalties, waiting time penalties, and

interest – as well as all potential PAGA penalties – for post-separation waiting time (Cal. Labor Code §

203), pre-separation waiting time (Cal. Labor Code § 204), wage statement violations (Cal. Labor Code

§ 226), record keeping violations (Cal. Labor Code § 1174.5), and minimum wage violations (Cal.

Labor Code § 1197). *Id.* As for the remaining Class Members, the maximum exposure, based on data

produced by Chevron and participating 3PCs, as extrapolated to a class of 10,000 individuals, equals

approximately $42.74 million in non-PAGA damages and penalties, or approximately $64.29 million in

total damages and penalties once PAGA penalties are included. *Id.* ¶ 33.

In litigation, Plaintiffs would have faced significant challenges to recovering these amounts.

First, Plaintiff may have been unable to establish that Chevron was liable as a joint or client-employer of

workers directly employed by Newtron and 3PCs. Second, Defendants would have argued that off-the-

clock time was not actually worked, as it constituted preparation time that employees were free to spend

as they wished (e.g., eating breakfast or socializing). Third, Plaintiff would have faced significant

obstacles in demonstrating that Covered Workers' claims could be adjudicated on a classwide basis.

*See, e.g.*, *Parker*, 2020 U.S. Dist. LEXIS 218187 (denying certification of similar off-the-clock claims at

Chevron and other refineries due to variations in individual experiences and certifying class as to wage

statement violations only). Fourth, Defendants would have argued that many penalties were duplicative

and could not be awarded. Fifth, Defendants would have argued that the Court should award the initial

violation amount for each PAGA violation, as opposed to the higher continuing violation amount. <u>Sixth</u>, Defendants would have argued that the Court could depart downward from the PAGA statutory penalty amounts. Furthermore, on the merits, Plaintiff may not have surmounted summary judgment, trial, and appellate challenges to any trial victory.

In light of the total exposure, the risks that Plaintiff faced in attempting to win on all arguments, and the narrow release that leaves untouched claims against the 3PCs that do not require proof of joint or client-employer status, the $1,925,000 Settlement is a strong recovery.

### a.    The Newtron Portion of the Settlement Is Reasonable.

Newtron's $225,000 portion of the Settlement constitutes approximately 9.5% of maximum potential exposure ($225,000/$2,370,000).

This is well within the range of reasonableness for similar cases, and courts in this Circuit routinely approve class settlements of comparable yields. *See, e.g.*, *Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835, 2019 U.S. Dist. LEXIS 159258, at *8 (N.D. Cal. Sep. 5, 2019) (approving class/PAGA settlement valued at 2% to 6.6% of total exposure, depending on different analyses of the value of the claims, over a class member's objection that the settlement amount was too low); *id.* (discussing Rule 23 settlement in *Tsyn v. Wells Fargo Advisors LLC*, No. 14-cv-02552, 2018 U.S. Dist. LEXIS 246223, at *5 (N.D. Cal. Nov. 1, 2018) valued at 5.75% of total exposure); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597 (N.D. Cal. 2020) (granting final approval where total settlement was 7.4% of the estimated damages based on a nationwide class); *Torres v. Pick-A-Part Auto Wrecking*, No. 1:16-cv-01915-DAD-BAM, 2018 U.S. Dist. LEXIS 2446, at *17 (E.D. Cal. Jan. 5, 2018) (granting preliminary approval for settlement constituting 4.4% of "maximum possible recovery"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (granting final approval where gross class recovery was 9% of maximum potential recovery); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason, . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *see also* Sagafi Decl. ¶ 38 (providing information regarding comparator off-the-clock case).

1

2

### b. Chevron's Portion of the Settlement, Covering Workers Employed by 3PCs, Is Reasonable.

3

4

5

6

7

Chevron's $1,700,000 portion of the Settlement constitutes approximately 2%-4% of the exposure for 3PC employees,[5] and is supported by the above case law, especially in light of the differences between the strength of the Covered Workers claims against Chevron and the strength of their claims against their direct employers (i.e., Newtron or other 3PCs). Sagafi Decl. ¶ 37. Since no 3PC besides Newtron is releasing claims, a steeper discount for non-Newtron claims is appropriate.

8

9

10

11

12

13

14

15

16

17

18

19

With respect to the Chevron portion of the Settlement, in addition to the numerous, significant litigation risks noted above, the discount is justified by the unique nature of the Settlement and release, which preserves potential claims against 3PCs (the Class Members' direct employers, who retain primary exposure for their unpaid wages and related claims). Because the Settlement narrowly releases only claims against Chevron and Newtron, and not against the 3PCs, the bulk of the value of the Covered Workers' claims remains viable (i.e., not released and not covered by the Settlement). The discrepancy in recoveries between the Newtron portion of the Settlement (approximately 9.5% of total) and non-Newtron Chevron portion (2-4% of total) is reasonable because Newtron employees will be releasing more valuable claims against their direct employer (Newtron), which do not require proof of joint- or client-employer liability. In contrast, Covered Workers employed by non-Newtron 3PCs will *not* release claims against their direct employers, but only against Chevron, whose liability hinges on a joint or client-employer relationship that could be difficult to establish at trial.

20

### c. The PAGA Allocation Is Reasonable.

21

22

23

24

Finally, the PAGA allocation of $115,500 represents 6% of the total $1,925,000 Settlement amount. This comports with applicable precedent. *See, e.g.*, *DiMercurio v. Equilon Enters. LLC*, No. 19-cv-04029-JSC, 2022 U.S. Dist. LEXIS 225426, at *14 (N.D. Cal. Dec. 14, 2022) (approving PAGA allocation of about 1.6% of overall recovery); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal.

25

26

27

28

---

[5] For a Class of 10,000 individuals (omitting employees covered by the Newtron portion of the Settlement), the recovery ranges from an estimated 3% of the maximum exposure (covering both non-PAGA and PAGA damages and penalties) to 4% (covering non-PAGA relief only). For a Class of 14,000 individuals, the recovery ranges from 2% of the maximum exposure (covering non-PAGA and PAGA damages and penalties) to 3% (covering non-PAGA relief only). Sagafi Decl. ¶ 37.

2016) (3.7%); *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1329-30 (N.D. Cal. 2014) (1%); *Slavkov v. Fast Water Heater Partners I, LP*, No.14-cv-04324-JST, 2017 U.S. Dist. LEXIS 116303, at *2 (N.D. Cal. July 25, 2017) (2.2%).

Given these considerations, Plaintiff submits that the $1,925,000 settlement amount, including the $115,500 PAGA amount, is fair, reasonable, and adequate, and that the Settlement is in the best interest of the Covered Workers.

### 3. The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs have litigated these claims zealously for three years, conducting substantial formal and informal discovery along the way. Specifically, Defendants produced relevant policies and procedures, agreements between Defendants and between Chevron and 3PCs, and extensive individualized information and data regarding Covered Workers, including payroll records and gate logs recording their entry and exit times from the Chevron facilities. Sagafi Decl. ¶¶ 19-20, 41. Thus, the Settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

### 4. Counsel's Experience and Views Support Approval.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Class Counsel are some of the most experienced class action litigators in the country. Sagafi Decl. ¶ 12. Class Counsel specialize in prosecuting complex employment class actions, and over many years have successfully— and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiff's claims and Defendants' defenses. *Id.* Based on their extensive experience, Class Counsel believe that the settlement is fair, reasonable, and adequate.

5.    **The Parties Participated in Arm's-Length Negotiations Before Chief Magistrate Judge Joseph C. Spero.**

When parties reach a settlement in private mediation, that "support[s] the conclusion that the settlement process was not collusive." *Tijero v. Aaron Bros.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Here, the settlement easily meets the rigorous scrutiny required in this District for both substantive and procedural reasons. First, the settlement is substantively strong, providing substantial monetary relief. Second, the settlement is procedurally sound, (a) having been reached after extensive, hard-fought adversarial litigation, with extensive discovery and motion practice, (b) with no parallel litigation that could give rise to reverse auction concerns, and (c) after two day-long settlement conferences, supervised by Judge Spero, and followed by months of further intense negotiations between the parties, also supervised by Judge Spero. Sagafi Decl. ¶¶ 17-26.

C.    **The Proposed Notices Are Clear and Adequate.**

The proposed Notices are the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B), and are "reasonable," Fed. R. Civ. P. 23(e)(1). The proposed Notices are consistent with the Northern District of California's Procedural Guidance for Class Action Settlements and modern best practices set forth by the Federal Judicial Center.[6] Sagafi Decl. Ex 1, Ex. B (Notices). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory if it "generally describes the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The parties' proposed Notices include all required information. Sagafi Decl., Ex. 1, Ex. B (Notices).

---

[6] *See Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr., https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited Jan. 26, 2023).

The parties have agreed, subject to Court approval, to have the Settlement Administrator mail notice via first class mail, postage prepaid, to the last-known address of the class members as updated through the United States Postal Service's National Change of Address database.  Sagafi Decl. Ex. 1, § II.F.7.  This method meets the requirements of due process.  *Overton v. Hat World, Inc.*, No. 11-cv-01645, 2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) (noting that individual notice to class members' last known address meets the requirements of due process).  Returned mail without forwarding addresses will be skip traced to get an updated address and then re-mailed.  Sagafi Decl. Ex. 1, § II.F.7.  If an address cannot be located for a Class Member, Defendants will make reasonable efforts to locate email addresses or telephone numbers for them, following which notice will be sent electronically via email and/or text message.  *Id.*  Notice will also be posted at Chevron's Richmond and El Segundo refineries and published in the manner recommended by the Settlement Administrator to reach any Class Members who may have not otherwise received direct Notice.  *Id.* § II.F.8.  Additionally, members of the PAGA Group will be sent a letter that describes the settlement and that they will be receiving a payment, which includes Plaintiff's counsel's contact information in case employees have any questions.  The Settlement Administrator shall be responsible for (1) creating and maintaining a website to provide information regarding the settlement, (2) receiving questions, and (3) responding to inquires made by Class Members.  Sagafi Decl. Ex. 1 § II.G.  Accordingly, the proposed notice plan complies with Rule 23 and due process.

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Plaintiff, after consultation with Defendants, proposes that the Court adopt the following schedule for effectuating the various steps in the settlement approval process described above.[7]

| Event | Proposed Date |
| --- | --- |
| Preliminary Approval Hearing | March 3, 2023 |
| Entry of Preliminary Approval Order (assumed for purposes of calculating subsequent dates) | March 3, 2023 |
| Defendants to provide class list data to Administrator | April 2, 2023 |
| Notice disseminated by Settlement Administrator | April 16, 2023 |

[7] These are placeholder dates assuming preliminary approval is granted on March 3, 2023.  Plaintiff will supply the Court with an updated calendar if preliminary approval is granted on a different date.

| Event | Proposed Date |
|---|---|
| Motion for attorneys' fees, costs, and service awards | May 17, 2023 |
| Deadline for exclusions and objections | May 31, 2023 |
| Final Approval Motion | June 2, 2023 |
| Final Approval Hearing | July 7, 2023 |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23; (2) preliminarily certify the proposed Settlement Class; (3) approve the proposed class notice and forms; (4) set appropriate deadlines; and (5) schedule a final approval hearing.

Respectfully submitted,

Dated: January 27, 2023

By: /s/ *Jahan C. Sagafi*
Jahan C. Sagafi (SBN 224887)
jsagafi@outtengolden.com
Moira Heiges-Goepfert (SBN 326861)
mhg@outtengolden.com
Kaelyn Mahar (SBN 338257)
kmahar@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Steven Elster (SBN 227545)
steve.elster.law@gmail.com
LAW OFFICE OF STEVEN ELSTER
785/E2 Oak Grove Road, #201
Concord, CA 94518
Telephone: (925) 324-2159

*Attorneys for Plaintiffs and Proposed Class Members*