UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN CLAYBORNE, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>NEWTRON, LLC, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-07624-JSW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING, IN PART, MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Re: Dkt. Nos. 201, 205 |

Now before the Court for consideration is the unopposed motion for final approval of class action settlement and PAGA settlement and motion for attorneys' fees and costs and service award filed Plaintiff Shawn Clayborne ("Plaintiff"). The Court has considered the parties' papers, relevant legal authority, and the record in the case. The Court has also considered the parties' arguments presented at the fairness hearing on June 30, 2023.[1] For the following reasons, the Court GRANTS the Plaintiff's motion for final approval and GRANTS, IN PART, the motion for attorneys' fees and costs and service award.

## BACKGROUND

Plaintiff filed this lawsuit in Contra Costa County Superior Court against Defendants Chevron and Newtron.[2] (Dkt. No. 1.) Defendants removed the case to this court on September 20, 2019. The Court denied Plaintiff's motion to remand, and after two amendments, the operative complaint is the TAC. (Dkt. No. 105.) Chevron operates petroleum refineries in

---

[1] The Court has also considered the supplemental submissions from the parties regarding missing class data. (*See* Dkt. No. 214.)
[2] Plaintiff David Pool settled individually with Defendant Performance Mechanical, Inc. ("PMI") and filed a joint stipulation of dismissal of his claims against Defendant Specialty Welding and Turnarounds, LLC ("SWAT") on August 30, 2023. (Dkt. No. 215.)

Richmond and El Segundo, California. Newtron and other third-party labor contracting companies provide workers to staff these refineries. (Dkt. No. 105, TAC ¶¶ 17, 30.) Plaintiff alleges Chevron is liable both as a joint employer together with Newtron and as a "client-employer" under Cal. Labor Code § 2810.3. The TAC asserts class and PAGA wage and hour claims relating to Defendants' alleged failure to pay Settlement Group Members for time spent traveling to and from jobsites and donning personal protective equipment.

Since this case was filed, the parties have engaged in motion practice, including a motion to remand, and in substantial discovery, raising several disputes before Magistrate Judge Westmore. The parties then participated in two days of settlement conferences supervised by Magistrate Judge Spero. The parties then continued to negotiate a resolution for several months before reaching an agreement to resolve this matter.

On February 22, 2023, the Court preliminarily approved the Settlement Agreement. (Dkt. No. 196.) The proposed Settlement Class groups were defined as follows:

> "PAGA Group" means those individuals who performed work from the period of July 17, 2018 through the date of the preliminary approval of the settlement . . . at Chevron's El Segundo, California and/or Richmond, California refineries as hourly workers employed by Newtron or by any Third-Party Contractors.
>
> "Participating Class Members" means those individuals in the Class who have not timely and properly opted-out of the Class. "Class" means those individuals who performed work from the period of September 20, 2015 through the date of the preliminary approval of the settlement . . . at Chevron's El Segundo, California and/or Richmond, California refineries as hourly workers employed by Newtron or by any Third-Party Contractors.

(Settlement Agreement § II.A.1-2.)

The $1,925,000 Gross Settlement fund provides for (a) payments to Participating Class Members and PAGA Group members, (b) PAGA penalty payments in the amount of $115,000, with 75% paid to the California Labor and Workforce Development Agency ("LWDA") and 25% paid to Aggrieved Individuals, (c) a Class Representative Service Award of up to $15,000, (d) class counsel's attorneys' fees of up to $673,750, which is 35% of the settlement amount, (e) litigation costs of up to $45,000, and (f) settlement administration costs not expected to exceed $90,000. The Net Settlement Amount, which is the amount to be paid to the Participating Class

2

Members for non-PAGA claims, is $986,250, and is defined as the Gross Settlement amount minus items (b) through (f). Defendants have no reversionary interest in the settlement fund. Unclaimed residual amounts will be allocated to the East Bay Community Law Center and Neighborhood Legal Services of Los Angeles County in equal amounts.

Participating Class Members who do not opt out will automatically receive their individual payments without submitting a claim form. *Id.* § II.F. The average gross settlement payment is approximately $378, and the average net settlement payment is $200.

On April 7, 2023, pursuant to the notice requirements in the Settlement Agreement and Preliminary Approval Order, the Settlement Administrator, JND, distributed notice to the 2,469 Settlement Group Members for whom Defendants provided addresses. (Dkt. No. 205-2, Declaration of Gretchen Eoff ("Eoff Decl.") ¶ 8.) The parties expected that the class list would be incomplete because of the difficulty Chevron anticipated in getting data from the various third-party contractor companies, and thus the parties supplemented the notice program in an effort to reach Settlement Group Members for whom data was unavailable. In addition to the notice program, Chevron continued to seek additional data from third-party contractors, and at the time of the Final Approval Hearing, the total class list included 5,084 Settlement Group Members with addresses.[3]

On May 19, 2023, Plaintiff filed his motion for final approval of the Settlement. (Dkt. No. 205.) The motion for attorneys' fees was filed on April 17, 2023. The parties appeared for a Final Approval hearing on June 30, 2023.

The Court shall address additional facts as necessary in the analysis.

//

---

[3] At the Final Approval Hearing, the parties notified the Court that the class list was missing Social Security numbers and workweek data for many individuals. The Court directed the parties to meet and confer as to what methods would be used to obtain the missing third-party data and thus enable the administrator to issue the proper tax form and calculate settlement payments to the class. The parties stipulated that for class members missing a social security number, their settlement payments will be treated as 100% non-wages for tax purposes. For class members missing workweek information, their settlement payments will be calculated based on the average number of workweeks worked by all Class Members employed by third-party contractors. (*See* Dkt. No. 214.)

3

# ANALYSIS

## A. The Court Grants the Motion for Final Approval.

### 1. Subject Matter Jurisdiction.

The Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. section 1332(d)(2). Defendants have provided the required CAFA notices to the appropriate governmental agencies.

### 2. Certification of the Settlement Class.

For purposes of the settlement, the Court approves the Settlement of the following groups defined as follows:

> "PAGA Group" means those individuals who performed work from the period of July 17, 2018 through the date of the preliminary approval of the settlement . . . at Chevron's El Segundo, California and/or Richmond, California refineries as hourly workers employed by Newtron or by any Third-Party Contractors.
>
> "Participating Class Members" means those individuals in the Class who have not timely and properly opted-out of the Class. "Class" means those individuals who performed work from the period of September 20, 2015 through the date of the preliminary approval of the settlement . . . at Chevron's El Segundo, California and/or Richmond, California refineries as hourly workers employed by Newtron or by any Third-Party Contractors.

### 3. Notice, Objections, and Requests for Exclusion.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received"

notice).

The Court finds that distribution of notice of the settlement has been completed in conformity with the Preliminary Approval Order. Defendants provided JDN with a list of 2,541 people, 2,469 of which had valid addresses. (Eoff Decl. ¶ 4.) On April 7, 2023, JND mailed notice packets via U.S. first class mail to the 2,469 Settlement Group Members. The notice informed Class Members of the nature of the action and of the opportunity to object to or opt out of the settlement. The notice also informed class members of the date for the final approval hearing. Two hundred and thirty notice packets were returned as undeliverable. (*Id.* ¶¶ 8-9.) JDN located new addresses for 147 of the 230 undeliverable addresses and remailed the notice packets. (*Id.* ¶ 9.) Of the 230 class members with undeliverable notices, 36 of them received notices by email. (*Id.* ¶¶ 9, 11.)

In addition, and pursuant to the Court's Preliminary Approval Order, Chevron posted notice at its Richmond and El Segundo refineries. (*Id.* ¶ 8.) Notice was published in the East Bay Times on April 11, 2023, and April 13, 2023, and in the El Segundo Herald on April 13, 2023, and a press release was sent to 1,000 English and Spanish media outlets, 342 of which posted it to their websites. (*Id.* ¶ 25.) As of June 16, 2023, 109, or 4%, of notices remained undeliverable. (*Id.* ¶ 12.) As of June 30, 2023, JDN received one request for an opt out and no objections to the proposed settlement.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Settlement Class Members.

**4.  Whether the Relevant Factors Weigh in Favor of Concluding the Settlement is Fair, Reasonable, and Adequate under Rule 23.**

Federal Rule of Civil Procedure 23(e) permits a court to approve a settlement that will bind a class "only on finding that it is fair, reasonable, and adequate after considering" a number of factors. Fed. R. Civ. P. 23(e)(2); *see also Hanlon*, 150 F.3d at 1026. The factors the Court must consider are whether:

> the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of

> any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). Further, the court "may consider some or all" of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

This case involves numerous disputed issues relating to the extent of Defendants' alleged liability and the proper calculation of any such liability. For example, the parties dispute whether Chevron would be liable as a joint or client-employer of the workers directly employed by Newtron. Defendants would have also disputed whether off-the-clock time was actually worked because it constituted preparation time that employees were free to spend as they wished. Additionally, Defendants dispute that a class action could be properly maintained under Federal Rule of Civil Procedure 23. With regard to the calculation of liability, Defendants would have argued that many penalties were duplicative and that the Court should award the initial violation amount for each PAGA violation as opposed to the higher continuing violation amount. Thus, the case involves several bona fide disputes.

The record shows that the settlement was reached as a result of intensive, serious, and non-collusive arm's length negotiations conducted with the assistance of Magistrate Judge Spero. Judge Spero supervised the parties in two day-long settlement conferences, followed by months of further negotiations between the parties before the settlement was reached.

The Court has also considered the nature of the claims, the amounts and kinds of benefits

paid in settlement, the allocation of settlement proceeds among the class members, and the fact that a settlement represents a compromise of the parties' respective positions rather than the result of a finding of liability at trial. To settle this action, Defendants have agreed to pay $1,925,000. Newtron will fund $225,000 of the settlement, and Chevron will fund $1,700,000 of the settlement. For Newtron, this amount represents approximately 9.5% of its maximum potential exposure of $2.37 million. For Chevron, this amount represents approximately 3% to 4% of the exposure for third-party labor contracting company employees. The discrepancy in recoveries between the Chevron portion and the Newtron portion is reasonable because Newtron employees are releasing claims against their direct employer while covered workers employed by third-party labor contracting companies other than Newtron are releasing claims only against Chevron. The PAGA allocation is $115,500, which is 6% of the total settlement amount.

The net settlement amount is $986,250 to be distributed to class members. Class members will receive an average individual settlement payment of approximately $200. Defendants have no reversionary interest in the settlement fund, and any unclaimed funds will be provided to the East Bay Law Community Law Center and Neighborhood Legal Services of Los Angeles County in equal parts. The Court finds the settlement amount reasonable.

The Court finds the relief provided for the class is adequate and finds that class counsel and the named Plaintiff have adequately represented the class members. The parties have shown that liability is not certain, and if the case were to proceed to trial, the amount of damages could be reduced or eliminated. Additionally, the favorable reaction of the class members favors granting the motion.

Based on the record as a whole, the Court finds that the relevant factors support a finding that the Settlement is fair, adequate, and reasonable, and in the best interest of the class members, and it GRANTS Plaintiff's motion for final approval. The Court confirms the prior appointments of Plaintiff Shawn Clayborne as a Class Representative and PAGA Group representative, and the counsel of record representing the Plaintiff in this action as Class Counsel.

//

//

**B.  The Court Grants, In Part, the Motion for Attorneys' Fees, Costs, and Service Awards.**

**1.  Attorneys' Fees.**

The Court has an "independent obligation" to ensure Plaintiff's fee request is reasonable. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award.  *Id*.  When applying the percentage-of-the-fund method, an attorneys' fee award of "twenty-five percent is the 'benchmark' that district courts should award."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Even when courts employ the percentage of recovery method, a lodestar crosscheck on the reasonableness of the fee is often performed.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Any class member must be allowed an opportunity to object to the fee motion itself, aside from any objection the class member may have to the preliminary notice that such a motion will be filed.  *See In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988, 993-95 (9th Cir. 2010).

Class counsel requests fees in the amount of $673,750, which is 35% of the common fund.  This amount is higher than the Ninth Circuit's general benchmark of 25%.  "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  "Relevant factors to a determination of the percentage ultimately awarded include: '(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 WL 264401, at *7 (N.D. Cal. Jan. 16, 2020) (quoting *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009)).

Plaintiff contends the requested fee award is reasonable because counsel achieved a strong result for the class and faced substantial risks in litigation.  Moreover, Plaintiff contends that class counsel is experienced in complex employment class actions such as this one and used these skills

8

to zealously litigate this case, including engaging in extensive discovery and motion practice, on a contingency basis. The Court finds an upward adjustment from the 25% benchmark is reasonable in light of the work class counsel performed in the case, the contingent nature of the action, and the results achieved.

Although counsel's requested fees of 35% is higher than the 25% benchmark, it is consistent with other wage and hour class actions where recovery is less than $10 million. *Rivas*, 2020 WL 264401, at *8 (citing *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million."); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626, at *7 (N.D. Cal. Feb. 4, 2021) (awarding class counsel 35% of common fund); *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (concluding award representing 38.8% of common fund was reasonable).

A lodestar cross-check also supports the reasonableness of the requested fee award. The calculation of the lodestar "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Counsel has submitted a declaration establishing hourly rates of between $875 and $1,100 for partners and between $375 and $640 for associates. (Sagafi Decl. ¶ 12.) The Court finds these rates are reasonable and consistent with the rates charged by other attorneys with similar experience. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable). The Court has also reviewed the hours worked and finds them reasonable.

Applying the hourly fees class counsel seeks to the number of hours billed, counsel's lodestar is $1,726,620. The requested attorneys' fees represent 39% of the total lodestar amount. This is a negative multiplier of approximately .39x, which supports the request for a common fund

9

1   percentage award that is greater than the benchmark.  *See Vizcaino*, 290 F.3d at 1051 n.6 (majority

2   of class action settlements approved had fee multipliers ranging between 1.5 and 3).

3       Thus, the Court concludes the attorneys' fees requested are reasonable.  The Court

4   GRANTS the request and awards class counsel $673,750 in attorneys' fees.

    **2.   Costs.**

6       Class counsel is entitled to recover "those out-of-pocket expenses that would normally be

7   charged to a fee-paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations

8   omitted).  Class counsel seeks reimbursement of costs of up to $45,000 in costs, which

9   encompasses fees for legal research, filing, printing and photocopying, postage, and mediation.

10  (Sagafi Decl. ¶¶ 20-22.)  The Court finds these costs were reasonably incurred and GRANTS the

11  request for costs in the amount of $39,898.45.

    **3.   Request for Claims Administrator Fees.**

13      Settlement Administrator JDN agreed to a payment of not more than $90,000 to perform

14  the duties required to administer the settlement.  As of April 30, 2023, JDN has incurred

15  $50,702.22 in settlement administration fees.  (Eoff Decl. ¶ 29.)  JDN currently estimates that

16  total settlement administration fees and expenses through completion of the settlement will be

17  approximately $90,000.  (*Id.* ¶ 28.)  The Court GRANTS the request to approve payment of not

18  more than $90,000 to JDN for settlement administration services in this matter.

    **4.   Plaintiff's Request for an Incentive Award.**

20      Finally, Plaintiff moves for an incentive award in the amount of $15,000 to Plaintiff

21  Clayborne.  "Incentive awards are fairly typical in class action cases."  *Rodriguez*, 563 F.3d at

22  958.  The decision to approve such an award is a matter within the Court's discretion.  *In re Mego*

23  *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  An incentive award is designed to

24  "compensate class representatives for work done on behalf of the class, to make up for financial or

25  reputational risk undertaken in bringing the action…" *Rodriguez*, 563 F.3d at 958-59.  "[D]istrict

26  courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

27  adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially

28  pressing where, ... the proposed service fees greatly exceed the payments to absent class

members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable." *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer." *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958-59). Courts have granted incentive awards that exceed $5,000 when warranted. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (awarding two $10,000 service awards where defendant would pay separately rather than pulling from common fund).

Plaintiff seeks an incentive award of $15,000, which is 75 times greater than the expected low-end individual recovery. Clayborne represents that he has spent 45-50 hours providing information to assist counsel since the inception of this litigation in 2019. (Clayborne Decl. ¶ 6.) Clayborne has also signed a broader release than the other class members. Counsel thus argues that the proposed service award is reasonable because Plaintiff created value by initiating and prosecuting this action which conferred a significant benefit on the class, invested significant time and effort in pursuing these claims, and undertook significant personal and professional risk by serving as the public face of this litigation.

The Court finds that the amount of time Clayborne invested in this litigation was not so substantial that he is entitled to an award of $15,000. For example, Clayborne was not required to sit for a deposition, and he does not attest that he feared for his professional or personal reputation as a result of his serving in the capacity of individual representative. Thus, Plaintiff's assistance in this matter is distinguishable from that of the class representatives in cases where courts have

found an award in excess of $5,000 warranted. *See, e.g.*, *Rabin*, 2021 WL 837626, at *10 (awarding $20,000 service award to named plaintiff who spent approximately 490 hours fulfilling his role as named plaintiff); *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. 06-cv-0963-CW, 2013 WL 3929129, at *1-2 (N.D. Cal. July 18, 2013) (awarding $35,000 and $25,000 to named plaintiffs who spent approximately 624 and 451 hours supporting the case and traveled for depositions). However, Clayborne did play an important role in the litigation with at least some personal and professional risk to himself. The Court concludes a reduction of the requested service award is appropriate, and it awards an incentive payment of $10,000. The Court directs the Settlement Administrator to disburse an award in this amount to Plaintiff Shawn Clayborne as provided in the Settlement Agreement.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for final approval and GRANTS, IN PART, the motion for attorneys' fees, costs, and service award.

It is FURTHER ORDERED:

1. The Settlement embodied in the Agreement is hereby finally approved in all respects, there is no just reason for delay, and the Parties are hereby directed to perform its terms.

2. The release as set forth in Section II.I of the Agreement together with the definition in Section II.B.20 relating thereto are expressly incorporated herein in all respects and made effective by operation of this Judgment. The Court hereby approves the release provisions as contained and incorporated in Section II.I of the Agreement. The Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims (including unknown claims) against the Releasees.

3. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose.

4. The Parties are hereby ordered to comply with the terms of the Agreement. Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

The claims against Newtron and Chevron are HEREBY DISMISSED WITH PREJUDICE and JUDGMENT is HEREBY ENTERED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 6, 2023

_____
JEFFREY S. WHITE
United States District Judge